# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan (Nawn) Green, : 
: No. 383 C.D. 2016
Petitioner : Submitted: August 19, 2016
:
v. :
:
Workers' Compensation :
Appeal Board (US Airways), :
:
Respondent :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY JUDGE WOJCIK FILED: February 24, 2017


Susan (Nawn) Green (Claimant) petitions for review of the February 9, 2016 order of the Workers' Compensation Appeal Board (Board) that affirmed the remand decision of Workers' Compensation Judge Pamela A. Santoro denying Claimant's reinstatement and penalty petitions. We affirm.

Claimant was injured in the course of her employment as a flight attendant with US Airways (Employer) on August 11, 1993. Employer filed a notice of compensation payable recognizing the work injury as a right meniscus tear. By decision and order of August 28, 2000, WCJ Rosalia Parker amended the description of the work injury to include a left medial meniscus tear.

Employer subsequently filed petitions to terminate/suspend compensation, and Claimant filed a review petition. The petitions were assigned to WCJ Parker, who observed Claimant's live testimony, reviewed surveillance

evidence showing Claimant performing various activities, and considered medical evidence from both parties. WCJ Parker noted Claimant's stipulation to job availability without wage loss, pursuant to a contractual agreement between Employer and its flight attendants; rejected Claimant's testimony that she was unable to work her pre-injury job; and accepted the testimony of Employer's medical witness as more credible than that of Claimant's medical witness, William G. Carson, M.D., to find that Claimant could perform her pre-injury job without restrictions.

Accordingly, by order dated July 11, 2005, WCJ Parker denied Claimant's review petition and granted Employer's suspension petition effective August 12, 2003.[1] On appeal, the Board affirmed the suspension of benefits, but modified WCJ Parker's decision, in part, to add a left lateral femoral condyle lesion to the description of the work injury.[2]

On January 7, 2008, Claimant filed a petition to reinstate benefits, asserting that her 1993 left knee injury had worsened as of December 1, 2007, and she could no longer perform her pre-injury job.[3] Claimant also filed penalty

---

[1] A suspension of benefits is appropriate where the work injury no longer affects the claimant's earning power. *See*, *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850, 852-55 (Pa. 2000). In workers' compensation law, the term "disability" means loss of earning power, not a physical disability caused by a work injury. If a claimant's work injury results in a loss of earning power, she is entitled to benefits; if not, benefits are properly suspended. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 59 (Pa. Cmwlth. 2014).

[2] WCJ Parker's July 2005 decision and the Board's decision of October 2006 were admitted as joint exhibits in these proceedings.

[3] A claimant seeking a reinstatement of suspended benefits bears the burden of proving that through no fault of her own her earning power is once again adversely affected by the work **(Footnote continued on next page…)**

petitions on January 7, 2008, and September 4, 2008, alleging that Employer violated the Workers' Compensation Act (Act)[4] by refusing to pay for reasonable and necessary medical treatment.

Claimant, who relocated to Tampa, Florida, testified before WCJ Santoro at a June 2008 hearing. In pertinent part, she stated that she was working as a flight attendant in August 1993 when the plane hit turbulence and she slipped and fell hard on both knees. She has had one surgery on her right knee and two on her left knee. Claimant testified that the pain in her left knee progressively worsened over time; in 2006, she was using crutches and her pain was at twelve on a scale of one to ten. She continues to treat with Dr. Carson and said that she takes only Tylenol or ibuprofen because anti-inflammatory medications affected her heart. Claimant stated that Dr. Carson recommended surgery, but she has not scheduled it. She noted that the insurance company refused to pay for injections Dr. Carson recommended, and his office has refused further treatment due to non-payment of bills. Claimant testified that she is unable to return to work because her knee pain prevents her from performing essential tasks such as kneeling, bending, squatting, pushing a cart, and walking uphill and downhill. WCJ's op., July 28, 2009, Finding of Fact No. 9.

Claimant also offered the deposition testimony of Dr. Carson, a board-certified orthopedic surgeon who practices in Tampa and has treated Claimant

---

**(continued…)**

injury and the disability that gave rise to the original claim continues. *Latta v. Workers' Compensation Appeal Board (Latrobe Die Casting Co.)*, 642 A.2d 1083, 1084 (Pa. 1994).

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

since 1993. Dr. Carson stated that Claimant reported a worsening of her pain in August 2006, and that by January 2007, she had constant pain and prolonged swelling. An x-ray indicated progression of degenerative changes to Claimant's knee, which Dr. Carson opined were directly related to her work injury.[5] An April 2008 MRI showed further tearing of the left knee, which Dr. Carson also attributed to the work injury. Based on his most recent examination in June 2008, Dr. Carson believed that Claimant suffered an extensive degenerative tear of the posterior horn of the left medial meniscus and damage to the articular cartilage at the lateral femoral condyle, which were caused by and represent a worsening of her work injury. He further opined that Claimant could not return to her pre-injury position and that doing so could cause further damage to her knee. WCJ's op., July 28, 2009, Finding of Fact No. 10. However, he testified that Claimant could perform computer work or other office work that was sedentary and did not involve prolonged standing. Reproduced Record (R.R.) at 41a, 56a-57a.

Employer presented the deposition testimony of David Newlin, a team leader for Inservco Insurance Services (Inservco),[6] who assumed responsibility for Claimant's file in 2006 and explained why he approved and/or denied payment of certain bills for Dr. Carson's services. WCJ's op., July 28, 2009, Finding of Fact No. 11.

_____

[5] Dr. Carson explained that articular cartilage damage will not improve but instead will progressively worsen over time. R.R. at 19a-28a; 37a-41a.

[6] Inservco serves as a third party administrator for the Workers' Compensation Security Fund, established under the Workers' Compensation Security Fund Act, Act of July 1, 1937, P.L. 2532, *as amended*, 77 P.S. §§1051-1066, which covers claims for benefits against insolvent insurers.

By decision and order dated July 28, 2009, WCJ Santoro denied Claimant's reinstatement and penalty petitions.[7] She found the testimony of Newlin credible and addressed the testimony of Claimant and Dr. Carson as follows:

> 12. Claimant's testimony is found to be neither credible nor persuasive as to her increasing pain and recurrence of her injuries, and the resulting disability. This is based in part on this Judge's observance of Claimant's demeanor at [the] hearing. It is noted that Dr. Carson agreed that her injuries were largely degenerative in nature. It is further noted that Claimant only sees Dr. Carson twice each year, although she describes her pain as twelve on a scale of one to ten. Therefore, Claimant's testimony is rejected in whole.

> 13. The testimony of Claimant's medical witness, Dr. William Carson, Jr., is found to be *credible but unpersuasive* as to Claimant's continuing disability, the recurrence of her work injuries, the causal relationship between her injuries and her work with [Employer], and the reasonableness and necessity of her medical treatment. It is noted that Dr. Carson characterized Claimant's injuries as degenerative in nature. It is further noted that although [Employer] did not present medical testimony to refute Dr. Carson's testimony, Claimant failed to present clear and convincing evidence to support her petitions.

WCJ's op., July 28, 2009, Findings of Fact Nos. 12-13 (emphasis added).

Claimant appealed to the Board. The Board first observed that the WCJ found Claimant's testimony not credible and found Dr. Carson's opinions unpersuasive. The Board next noted that a WCJ's credibility determinations are not subject to appellate review, *Greenwich Collieries v. Workers' Compensation*

---

[7] Because Claimant's appeals to the Board and this Court have focused on the denial of her review petition, we do not separately address any issues related to penalties.

*Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth 1995). The Board concluded that Claimant failed to present credible evidence in support of her petitions and affirmed the WCJ's decision.

Whereas the Board understood that the WCJ *rejected* Dr. Carson's testimony, on Claimant's initial appeal, this Court stated that "[c]learly, the WCJ found Dr. Carson to be credible." *Green v. Workers' Compensation Appeal Board* (*Green I*), 28 A.3d 936, 942 (Pa. Cmwlth. 2011). We also concluded that the WCJ erred in finding Dr. Carson's testimony to be credible but unpersuasive. "Notably, the WCJ found Dr. Carson to be credible. In contrast, Employer did not present any expert testimony regarding the history and present state of Claimant's work injury. That notwithstanding, the WCJ found Dr. Carson to be 'unpersuasive.'" *Id.* at 939.

We stated that the WCJ provided no basis for that finding, other than a reference to Dr. Carson's characterization of Claimant's injuries as degenerative in nature.[8] In the absence of another explanation, we determined that the WCJ had erroneously presupposed that the use of the term "degenerative" precluded a finding of a causal connection to a prior work injury. *Id.* at 940-41.

Relying on *Sewell v. Workers' Compensation Appeal Board (City of Philadelphia)*, 772 A.2d 93 (Pa. Cmwlth. 2001) (reversing a Board decision because the testimony credited by the WCJ, that the work injury set the claimant's degenerative arthritis in motion, supported only an award of benefits), we concluded that the WCJ in this case likewise found Dr. Carson to be credible, but

---

[8] Although the court noted in *Green I* that the WCJ found Newlin's testimony to be "credible and persuasive," 28 A.3d at 939, it did not address the WCJ's rejection of *Claimant's* testimony as not credible. WCJ's op., July 28, 2009, Finding of Fact No. 12.

6

misread his testimony and misapplied the law to his credited medical opinion. We stated that "as in *Sewell*, 'no reasonable mind could rely upon this testimony to conclude that [Claimant's degenerative changes were not attributable to [her] work injury,'" *Green I*, 28 A.3d at 942 (quoting *Sewell*, 772 A.2d at 97). Thus, we held that the Board erred in affirming the WCJ's denial of Claimant's reinstatement petition, vacated the Board's decision, and remanded the matter for a new decision by a WCJ "in accordance with" our opinion. 28 A.3d at 943.

In her April 25, 2014 decision on remand, WCJ Santoro issued new findings of fact that summarized the procedural history of the case and the witnesses' testimony concerning the reinstatement and penalty petitions. The WCJ again rejected Claimant's testimony as not credible, citing her demeanor, her magnified complaints of pain, and her inconsistent testimony.[9] The WCJ

---

[9] Finding of Fact No. 9b states:

> Based upon the record as a whole, this adjudicator finds that Claimant's testimony was not credible or persuasive in whole and especially with regard to her inability to return to work. Having had the opportunity to witness Claimant's demeanor during testimony as well as her physical movements within the hearing room, this adjudicator finds that she did not present herself as being a credible witness. In finding the Claimant's testimony to generally not be credible, this adjudicator notes that Claimant magnified her pain complaints by indicating that her pain was a 10 on a scale where 10 would be pain that causes one to cry uncontrollably. Furthermore, Claimant informed Dr. Carson that her pain complaints were a 12 on a scale of 1 to 10, which reflected exaggeration of her complaints. Furthermore, this Judge notes that Claimant asserted that her condition was bone on bone in the knee at the time of hearing, which was different than her testimony in 2005; however, in Finding of Fact 5(d) in the July 11, 2005 Decision of WCJ Parker, it was reported that Claimant testified in 2005 that she had bone rubbing on bone. Furthermore, this Judge notes that Claimant reports that she was required to

**(Footnote continued on next page…)**

7

acknowledged her prior misunderstanding of Dr. Carson's testimony but stated that the misunderstanding ultimately led to her finding that his testimony was credible.[10]   On remand, the WCJ credited Dr. Carson's testimony that Claimant

**(continued…)**

> produce a report from her treating physician appears [sic] inconsistent with Claimant's stipulation in the July 11, 2005 Decision of WCJ Parker where Claimant agreed that her pre-injury job was open and available due to a contract between the Employer and the flight attendants.  Finally, this Judge agrees with WCJ Parker's assessment that Claimant settled into a lifestyle with a presumption of disability.

[10] Finding of Fact No 9a (emphasis added) states:

> Based upon the remand, this adjudicator was instructed to make findings based upon the Commonwealth Court's Decision which found a capricious disregard for the evidence and a misunderstanding of Dr. Carson's testimony.  When reviewing the evidence as a whole, this adjudicator agrees that that [sic] misunderstanding as to the opinions of Dr. Carson's testimony, but this ultimately led to the finding of Dr. Carson to be credible. *This adjudicator specifically rejected Claimant's testimony of having suffered a compensable disability as a result of the work injury, which is in direct conflict with Dr. Carson's testimony that Claimant was disabled due to the work injury.  Consequently, this adjudicator resolves this conflict in credibility by once again finding that Claimant's testimony of being incapable of performing her pre-injury job was not believed due to Claimant's demeanor during testimony and her exaggeration of pain complaints. Likewise, the credibility determination of Dr. Carson concerning Claimant's disability or alleged inability to work at her pre-injury position is also rejected as not being credible due in large part to Dr. Carson's opinions being in part based upon Claimant's subjective pain complaints* due to the rejection of the credibility of Dr. Carson's testimony that Claimant's pre-injury position would bother and wear out her knee further.  As Claimant did not demonstrate that a worsening of her condition caused her to be disabled, Claimant's Reinstatement Petition is hereby denied.

8

suffered a worsening of her condition, but she rejected his testimony that the worsening of her condition caused her to be disabled from her pre-injury position, explaining that Dr. Carson's opinions were based in part on Claimant's incredible subjective complaints.[11] Accordingly, the WCJ again denied Claimant's reinstatement and penalty petitions, and the Board affirmed the WCJ's decision.

On appeal to this Court,[12] Claimant argues that: 1) the WCJ's decision is not a reasoned decision, as required by Section 422(a) of the Act, 77 P.S. §834; 2) the WCJ capriciously disregarded unrebutted testimony; 3) the WCJ exceeded the scope of the remand order; and the WCJ improperly applied a heightened burden of proof in deciding the reinstatement petition.[13]

---

[11] Finding of Fact No. 9c states:

> Based upon the record as a whole, this adjudicator finds Dr. Carson's testimony that Claimant suffered a worsening of condition to be credible as Claimant has some progression of the left lateral condyle defect and left medial meniscus tear, which were both caused by the work injury; however, this adjudicator rejects Dr. Carson's opinion that worsening of condition caused Claimant to be disabled from her pre-injury position as a flight attendant. The rejection of Dr. Carson's testimony concerning Claimant's alleged disability is based in part upon Dr. Carson having relied upon Claimant's incredible subjective pain complaints during his evaluation and Dr. Carson's admission that he felt for years that Claimant could not perform the flight attendant position, which represents an incredible and collateral attack on the prior Decision of WCJ Parker which found Claimant to be capable of performing this position.

[12] Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

[13] We have consolidated and reordered Claimant's arguments for the sake of clarity.

Section 422(a) of the Act provides that

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. *Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection.* The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834 (emphasis added). In this case, Claimant contends that the WCJ's decision is not reasoned because "[i]n focusing on Claimant's demeanor and perceived exaggeration of [the] severity of [her] pain" as a reason to disregard her testimony and that of Dr. Carson, "the WCJ failed to consider or address the overwhelming and uncontroverted objective evidence" that supports their testimony that Claimant is again disabled by her work injury. (Claimant's brief at 17.) In making these arguments, Claimant misconstrues the reasoned decision requirement of the Act. In *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchinson)*, 717 A.2d 1086 (Pa. Cmwlth. 1998), we observed:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that

10

> the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.
>
> However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously.

*Id.* at 1088-89.

Claimant asserts that the WCJ's decision is not reasoned because the WCJ failed to address evidence that supports her testimony and Dr. Carson's opinions. However, "in providing an adequate basis for appellate review, the WCJ is not required to address all of the evidence presented in a proceeding" in her written adjudication. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 753 A.2d 293, 304 (Pa. Cmwlth. 2000), *aff'd*, 828 A.2d 1043 (Pa. 2003). Instead, to satisfy the "reasoned decision" requirement, a WCJ must only make findings necessary to resolve the issues raised by the evidence and relevant to the decision. *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1202 (Pa. Cmwlth. 2006); *Montgomery Tank Lines v. Workers' Compensation Appeal Board (Humphries),* 792 A.2d 6, 13 n.10 (Pa. Cmwlth. 2002). Because the WCJ was not required to address all of the evidence presented, Claimant's argument in this regard necessarily fails.

Claimant next argues that the WCJ capriciously disregarded Dr. Carson's testimony.[14] More specifically, Claimant contends that the WCJ erred in

---

[14] Capricious disregard means a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 812 A.2d 478, 487 n.12 (Pa. 2002). While the WCJ is free to accept, in whole or in part, the testimony of any witness, she may not
**(Footnote continued on next page…)**

11

rejecting Dr. Carson's medical testimony on the basis that he relied in large part on Claimant's subjective, exaggerated complaints. Claimant relies on *Sewell* as holding that a WCJ may not discredit a medical expert's opinion merely because it is based on the personal history provided by the claimant. However, Claimant either misstates or misapprehends the holding in *Sewell*. In that case we acknowledged that a personal history provided by a claimant *may* provide a sufficient foundation to support a competent expert medical opinion. *Id.* at 97-98. In doing so, we explained that "[e]xpert medical testimony is not rendered incompetent merely because it is premised upon the expert's assumption of the truthfulness of information, *unless that information is not proven by competent evidence or is rejected by the WCJ.*" *Id.* (emphasis added).

Here, the WCJ rejected Dr. Carson's opinion because it was based in large part on information provided by Claimant that was rejected by the WCJ. Contrary to Claimant's contentions, this result is consistent with our analysis in *Sewell*.

Claimant also argues that the WCJ exceeded the scope of the remand order. We disagree. A WCJ must restrict her decision on remand to the instructions within the remand order. *Teter v. Workers' Compensation Appeal Board (Pinnacle Health System)*, 886 A.2d 721 (Pa. Cmwlth. 2005); *Clark v. Workers' Compensation Appeal Board (Wonder Bread Co.)*, 703 A.2d 740 (Pa. Cmwlth. 1997). Importantly, however, the WCJ "is not required to produce the same result as the initial decision . . . ." *Teter,* 886 A.2d at 723.

---

**(continued…)**

capriciously disregard evidence. *Reed v. Workers' Compensation Appeal Board (Allied Signal Inc.)*, 114 A.3d 464, 470 (Pa. Cmwlth. 2015).

In *Teter*, the WCJ initially found the claimant's experts credible and the employer's expert not credible and granted the claimant's claim petition. The employer appealed, and the Board remanded to the WCJ with instructions to summarize the testimony of the employer's medical witness and explain the basis for his credibility determinations regarding the expert medical testimony. On remand, the WCJ found the employer's expert credible, and he relied on that testimony to terminate benefits as of a certain date. The claimant then appealed, asserting that the WCJ could not change his credibility determination on remand, as doing so it was beyond the scope of the remand order. The Board rejected that assertion, and this Court affirmed the Board.

We explained that the WCJ was required on remand to review the medical testimony and state the basis for his determinations, but a WCJ is not required to produce the same outcome on remand, as long as he stays within the boundaries of the remand order. *Id.* On remand, the WCJ in *Teter* reviewed and summarized the medical experts' testimony; made new credibility determinations; and provided an explanation for those credibility determinations. We held that the WCJ did not err in reaching a different outcome because the remand order did not require the WCJ to produce the same result as the initial decision. *Id.*

*Teter* is dispositive here. In *Green I*, because the WCJ found Dr. Carson to be credible, but not persuasive, it appeared that the WCJ rejected Dr. Carson's opinion based solely on a misunderstanding of the law. In accord with *Sewell*, we observed that "no reasonable mind *could rely upon [Dr. Carson's] testimony* to conclude that [Claimant's] degenerative changes were not attributable

13

to [her] work injury." 28 A.3d at 942 (emphasis added). Rather than reverse, as we did in *Sewell*, we vacated and remanded the matter for a new decision.[15]

Our instruction on remand was the issuance of a new decision that was "in accordance with" our opinion. 28 A.3d at 943. On remand, the WCJ more clearly explained her credibility determinations. The WCJ again rejected Claimant's testimony, citing, *inter alia*, Claimant's demeanor. As to Dr. Carson's testimony, the WCJ found it credible in part, accepting his testimony that Claimant's condition had worsened, but rejecting as not credible his opinion that Claimant was unable to return to her pre-injury job because that opinion was based largely on Claimant's subjective and discredited complaints. As reflected in the remand decision, the WCJ did not "rely on Dr. Carson's testimony" in its entirety to conclude that Claimant was not disabled due to her work injury. Moreover, the WCJ's remand decision provides the same outcome. We discern no error. *Teter*.

---

[15] We recognize that it is not uncommon for a WCJ to use phrases such as "credible and persuasive" or "credible but not persuasive." *See, e.g., City of Philadelphia v. Workers' Compensation Appeal Board (Rilling)*, 827 A.2d 1258, 1260 (Pa. Cmwlth. 2003) ("WCJ Newman found that the testimony of Drs. Pietra and Rodman was *credible and persuasive*, but that of Dr. Gelfand was not."); *Haddon Craftsmen, Inc. v. Workers' Compensation Appeal Board (Krouchick)*, 809 A.2d 434, 437 (Pa. Cmwlth. 2002) ("The WCJ accepted *as credible and persuasive* the testimony of all of Claimant's witnesses [and] accepted Employer's witnesses *as credible, but not persuasive*."); and *Kashuba v. Workers' Compensation Appeal Board (Hickox Construction)*, 713 A.2d 169, 170 (Pa. Cmwlth. 1998) (emphasis added) ("The WCJ accepted Claimant's testimony *as credible and persuasive* concerning his agreement with Employer . . . . The WCJ accepted the testimony of both certified public accountants *as credible, but not persuasive*, concerning the actual market value of Claimant's services."). In most instances, the use of these terms as reflecting a WCJ's assessment that the witness is testifying *truthfully* (stating the truth as he or she believes it) but not, necessarily, *convincingly*. In *Green I*, however, the WCJ's additional references to the degenerative nature of Claimant's condition raised the possibility that the WCJ erred or misunderstood the law, necessitating remand.

Finally, we reject Claimant's assertion that the WCJ applied an improperly heightened burden of proof in deciding the reinstatement petition. As Claimant acknowledges, her burden was to prove that through no fault of her own, her earning power is once again adversely affected by her injury and the disability that gave rise to her original claim continues. *Latta*. Here, the WCJ denied reinstatement because Claimant failed to establish that any *disability* resulting from the work injury had recurred.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan (Nawn) Green, : 
                               : No. 383 C.D. 2016
              Petitioner : 
                               : 
             v. : 
                               : 
Workers' Compensation : 
Appeal Board (US Airways), : 
                               : 
               Respondent : 

O R D E R

AND NOW, this 24<u>th</u> day of <u>February</u>, 2017, the order of the Workers' Compensation Appeal Board, dated February 9, 2016, is affirmed.

_____
MICHAEL H. WOJCIK, Judge