IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Troy Davis,                                              :
                Petitioner                 :
                                            :
       v.                                    : No. 126 C.D. 2018
                                            : SUBMITTED: May 25, 2018
                                            :
Workers' Compensation Appeal                            :
Board (CPG International, LLC),                          :
              Respondent                :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                   FILED: August 23, 2018

      Troy Davis (Claimant) petitions for review of the December 28, 2017 order of the Workers' Compensation Appeal Board (WCAB), which affirmed the March 22, 2017 decision and order of the Workers' Compensation Judge (WCJ). That WCJ order granted, in part, Claimant's claim petition for temporary total disability benefits from a work-related injury under the Workers' Compensation Act (Act),[1] and then immediately suspended those workers' compensation benefits and terminated Claimant's benefits as of March 3, 2016. The issue before this Court is whether the WCJ's decision that Claimant did **not** sustain a work-related low back injury is supported by substantial evidence. For the following reasons, we affirm the WCAB.

## I. Background

      On June 2, 2014, Claimant began working as a temporary employee as a machine operator for CPG International, LLC (Employer), transitioning to full time

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

in February 2015. Some of Claimant's responsibilities included moving materials weighing up to 50 pounds. On June 29, 2015, while at work, Claimant tripped and fell backwards. Claimant alleged that he sustained injuries to his right elbow, shin, and lower back as a result of this accident.

After the fall, Claimant continued to work for several more months. On October 8, 2015, he sought medical treatment for back pain. Reproduced Record (R.R.) at 37a.

On December 22, 2015, Claimant filed a claim petition seeking temporary total disability benefits for injuries to his low back and right elbow as of December 21, 2015, plus payment of attorneys' fees and medical bills. On January 20, 2016, Employer issued a medical-only Notice of Compensation Payable (NCP) for Claimant's work-related injury for only his "right elbow contusion." R.R. at 36a.

The WCJ held an evidentiary hearing on June 21, 2016.[2] At this hearing, Claimant testified to the following.

On June 29, 2015, while at work, Claimant tripped and fell backwards onto a concrete floor, cutting his right elbow in the process. R.R. at 339a-40a. He then received assistance from Gino Owens, his co-worker, who bandaged the cut. *Id.* Claimant then reported the incident to his team leader, Dominick DiPietro and advised Mr. DiPietro that he had hurt his back as a result of the fall, but that he would be fine. *Id.* at 341a-43a. Claimant did not seek additional medical treatment at that time. *Id.* at 344a.

---

[2] At the hearing, Claimant amended the claim petition to include a request for partial disability benefits from November 12, 2015 to January 19, 2016, with total disability benefits thereafter. WCJ's Hr'g, Notes of Testimony (N.T.), 1/21/16, at 6-7; Finding of Fact (F.F.) No. 2, R.R. at 36a.

The following day Claimant informed his supervisors Victor Alunni and Rob Hunter, and Butch Barron from Human Resources, that he had fallen and injured his elbow and that his back was sore. R.R. at 345a-47a.

Claimant continued to work through the summer of 2015, despite worsening back pain, but eventually in October, he informed Mr. Barron that he needed to see a doctor. *Id.* at 350a-51a. Mr. Barron arranged for an immediate appointment with Employer's physician, Catherine Marie Rainey, M.D., but Claimant continued his shift and instead visited Dr. Rainey the following morning. *Id.* at 351a. On October 8, 2015, Claimant presented to Dr. Rainey with complaints of pain in his lower back, right hip, and right groin areas. *Id.* at 133a, 351a. On that same date, Claimant had X-rays of his right hip and lumbar spine, which indicated mild degenerative changes involving Claimant's facet joints as well as established bone spurs near his head and neck. *Id.* at 23a, 25a, 82a-83a, 154a.

On November 20, 2015, Claimant underwent a magnetic resonance imaging (MRI) on his back, which indicated left-sided disc herniation and general degenerative changes at L5-S1. *Id.* at 26a, 123a, 355a, 372a.

At the hearing, Claimant offered into evidence the deposition transcript of Cheryl Oleski, D.O., a board-certified physician in physical medicine and rehabilitation. R.R. at 77a. On January 26, 2016, Dr. Oleski examined Claimant, as well as the X-ray and MRI reports. *Id.* at 76a-77a, 79a, 356a. Dr. Oleski diagnosed Claimant with inflammation on the right side, lower spine sprain, and left L5-S1 disc herniation, which she attributed to Claimant's June 29, 2015 work-related accident, and concluded that Claimant was unable to work due to his back injury. *Id.* at 82a-84a, 93a, 95a, 100a. Claimant continued to treat with Dr. Oleski for his back pain every 4- to 6-weeks with Tylenol, creams, and two lower back injections. *Id.* at 84a-86a, 92a-93a, 357a-58a. Dr. Oleski recommended a follow-up MRI, which Claimant

underwent on May 5, 2016. *Id.* at 91a, 93a, 130a. That MRI indicated mild degenerative disease but no significant central spinal stenosis. *Id.* at 93a; 130a.[3]

At the evidentiary hearing, Employer submitted into evidence the deposition testimony from Robert Hunter, its director of operations. Mr. Hunter testified that he had received an accident report that had been filled out by Mr. DiPietro, Claimant's team leader, the day after the accident, but he did not recall Claimant personally reporting a back injury to him. *Id.* at 162a, 168a-170a, 172a-73a.[4] According to Mr. Hunter, Claimant continued working without apparent difficulty from the day of the accident until October 2015, at which time Mr. Hunter recalls that Claimant first began complaining about his back. *Id.* at 172a, 178a.

Employer also provided deposition testimony from Mr. Alunni, who was Claimant's supervisor at the time of the incident. *Id.* at 206a. Mr. Alunni reviewed the accident report and followed up with Claimant regarding his injury within a day or two after the accident. *Id.* at 206a-07a. Mr. Alunni recalled that Claimant only reported an elbow injury and did not complain about his back until August or September. *Id.* at 207a-08a.

In addition, Employer offered deposition testimony from Michele Homitz, Employer's production supervisor. During the time period in question, Ms. Homitz regularly observed Claimant working and she was unaware that Claimant missed

---

[3] Spinal stenosis is defined as a "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine, *caused by encroachment of bone upon the space….The condition may be either congenital or due to spinal degeneration.*" Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health (7th ed. 2003) https://medical-dictionary.thefreedictionary.com/spinal+stenosis (last visited Aug. 13, 2018) (emphasis added).

Dr. Oleski testified that it is not unusual for someone Claimant's age to have degenerative changes in his lower back and that long time smokers, like Claimant, have increased rates and risks of degenerative back problems. R.R at 112a-13a.

[4] The accident report was apparently signed by the Claimant on July 10, 2015. The record is not clear on why Claimant signed the accident form approximately 10 days after it was prepared.

any work or had work restrictions until Claimant went to Employer's doctor in October 2015. *Id.* at 308a-09a, 312a. Ms. Homitz testified that, on October 7, 2015, Claimant requested a copy of the accident report to provide to his doctor who would be treating him for a back injury. *Id.* at 307a, 310a-12a, 315a, 323a, 343a.

Employer also submitted the accident report into evidence. *Id.* at 331a-32a. It states: "Troy landed on his left elbow resulting in a small laceration and swelling in the area." as well as a "bruise on [his] left shin." *Id.* at 142a-43a. The accident report contains no reference to a low back injury. *Id.* at 24a.

Finally, Employer presented deposition testimony from medical expert Christian I. Fras, M.D., a board-certified orthopedic surgeon, who conducted an Independent Medical Examination (IME) of Claimant on March 3, 2016. *Id.* at 234a-35a, 240a. Dr. Fras also reviewed Claimant's prior medical history, both MRIs, and the X-rays. Dr. Fras found that the November 2015 MRI showed degenerative disc disease and the presence of a left side disc herniation and noted that the May 2016 MRI still indicated degenerative disc disease, but that the left side disc herniation was no longer present. *Id.* at 248a-51a. Dr. Fras testified that Claimant's medical history did not indicate symptoms of left sided disc herniation and his physical examination of Claimant yielded no objective findings of a disc herniation. *Id.* at 258a-59a, 263a-64a. Dr. Fras opined that Claimant's condition did not bear the clinical hallmarks of right-sided damage to the lower back, and that Claimant's reduced range of motion of his right hip was suggestive of right hip arthritis. *Id.* at 248a, 264a-65a.

Ultimately, Dr. Fras came to two conclusions. First, Claimant's complaints of back pain were "potentially . . . related . . . to hip arthritis, or other conditions, including hernia problems, but they're not conditions that could be attributed to the L5-S1 left-sided disc herniation." *Id.* at 259a, 263a-64a. Second, Claimant only

sustained a right elbow injury from the accident, was fully recovered from this injury, and was able to return to his pre-injury job without restrictions. R.R. at 257a-58a, 261a-62a.

The WCJ issued his Decision and Order on March 22, 2017, wherein he determined that Claimant had not met his burden of proving that he sustained a back injury from the work accident,[5] but that Claimant had sustained a compensable elbow injury entitling him to an award of temporary partial disability benefits. However, because Claimant continued to work with no loss in earnings following the accident, the WCJ immediately suspended Claimant's benefits of March 3, 2016, the date of Claimant's IME. R.R. at 28a-29a.

Claimant appealed to the WCAB, which did not take any additional evidence and affirmed the WCJ. This appeal followed.

## II. Issues

On appeal,[6] Claimant argues that the WCJ's determination that Claimant did not sustain a work-related low back injury is not supported by substantial evidence.[7]

## III. Discussion

Here, Claimant is essentially asking this Court to reweigh the evidence to support Claimant's position. Claimant disputes the WCJ's credibility determinations and argues that the WCJ incorrectly relied on the accident report that

---

[5] R.R. at 27a.

[6] Our review of an order of the WCAB is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether WCAB procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

[7] For the first time on appeal to this Court, Claimant raises the issue of his compliance with Section 311 of the Act, which requires a claimant to inform his employer of a work injury within 120 days of its occurrence. 77 P.S. §631. This issue is both waived and irrelevant. Employer has never disputed that Claimant reported his work injury within the required time period.

6

did not indicate a back injury. Petitioner's Brief at 11. In his brief, Claimant asserts: "[t]here is no other reasonable explanation for his back injury other than the fall at work on June 29, 2015. . . . The fact that he continued to work and did not seek medical treatment immediately is of no substantial concern and the WCJ's reliance on those facts is clearly misplaced." Petitioner's Brief at 11.

The WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight, and can accept or reject the testimony of any witness, in whole or in part. *Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997). The Court will not disturb the WCJ's findings if they are supported by substantial and competent evidence. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995). Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Co. v. Workmen's Comp. Appeal Bd. (Clouser)*, 539 A.2d 11 (Pa. Cmwlth. 1988). Pursuant to Section 422(a) of the Act,[8] a reasoned decision is one that

---

[8] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834. Section 422(a) states:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge *must adequately explain the reasons* for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and *explain adequately* the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review. (Emphasis added.)

contains findings of fact and conclusions of law, based on all the evidence, which clearly and concisely state and explain the rationale for the WCJ's decision. 77 P.S. § 834. In *Green v. Workers' Compensation Appeal Board (US Airways)*, we explained:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.

155 A.3d 140, 147 (Pa. Cmwlth.), *appeal denied*, 169 A.3d 1081 (Pa. 2017) (quoting *PEC Contracting Eng'rs v. Workers' Comp. Appeal Bd. (Hutchinson)*, 717 A.2d 1086, 1088-89 (Pa. Cmwlth. 1998)). Thus, Section 422(a) does not require the WCJ to provide *adequate reasons* for accepting or rejecting evidence but, rather, an *adequate explanation* of his or her reasons. *PEC Contracting Eng'rs,* 717 A.2d at 1089 n.3. The WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence is not subject to appellate review unless such determinations are made arbitrarily or capriciously. *PEC Contracting Eng'rs*, 717 A.2d at 1089.

Here, we find that the WCJ sufficiently explained his findings which were supported by the evidentiary record. The WCJ accepted as credible Claimant's testimony that he injured his elbow at work, but rejected Claimant's testimony that he injured his back from the fall. R.R. at 42a. Additionally, the WCJ credited the testimony of Mr. Hunter, Mr. Alunni and Ms. Homitz, which contradicted Claimant's assertions that he reported or sustained a back injury on the day of the accident, since Claimant never reported any back injuries or pain. *Id.* at 42a-43a. According to the WCJ, the testimony of Mr. Alunni and Ms. Homitz "remained

consistent and was not shaken on cross-examination." *Id.* at 43a. The WCJ found that Claimant did not indicate any back injuries on his signed accident report and that there was no evidence that Claimant sought medical treatment for back injuries until months after the accident. *Id.* at 42a.

The WCJ further rejected the testimony of Dr. Oleski because her opinions were premised on the assumption that Claimant injured his back at work on June 29, 2015, and the WCJ did not find credible evidence that Claimant injured his back on that date. *Id.* at 43a. Additionally, the WCJ further found that "Dr. Oleski acknowledged that Claimant suffers from degenerative changes in his lumbar spine unrelated to the injury sustained on June 29, 2015. Dr. Oleski further admitted to having no personal knowledge of Claimant's condition prior [to Claimant's first visit to Dr. Oleski on] January 26, 2016." R.R. at 43a.

The WCJ accepted as credible and persuasive the testimony of Dr. Fras, which was supported by Dr. Fras' physical examination of Claimant, Claimant's medical history, and the MRI and X-ray reports. *Id.* at 28a, 43a. The WCJ also concluded that Claimant failed to establish a causal connection between Claimant's low back pain and his elbow injury and any subsequent low back pain. *Id.* at 43a.

For these reasons, we find that the WCJ's decision was neither arbitrary nor capricious and was based on substantial evidence. Accordingly, we affirm.

 

 

_____

ELLEN CEISLER, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Troy Davis,                              :
                    Petitioner           :
                                         :
        v.                               :   No. 126 C.D. 2018
                                         :
Workers' Compensation Appeal             :
Board (CPG International, LLC),           :
                    Respondent           :

**O R D E R**

AND NOW, this 23rd day of August, 2018, the order of the Workers' Compensation Appeal Board, dated December 28, 2017, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge