IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Veronica North,                          :
                    Petitioner           :
                                         :
        v.                               :   No. 627 C.D. 2023
                                         :
GHG, LLC (Workers' Compensation          :
Appeal Board),                           :
                    Respondent           :   Submitted:  May 7, 2024

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  June 5, 2024

      Veronica North (Claimant) petitions this Court for review of the May 16, 2023 order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) decision denying her petition for penalties (Penalty Petition) and request for reinstatement of benefits. Claimant argues that the WCJ failed to issue a reasoned decision pursuant to Section 422(a) of the Workers' Compensation Act (Act),[1] 77 P.S. § 834, and that the failure to reinstate benefits was unsupported by the evidence in the record. Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1; 2501-2710. In relevant part, Section 422(a) provides that all parties to a proceeding before a WCJ "are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." *Id.*

# I. Background

## A. The 2015 Injury and Prior Litigation

Claimant was working for GHG, LLC (Employer) as a home health aide when, on September 9, 2015, she was kicked in the right shin by a patient. Certified Record (C.R.), Item No. 27, February 6, 2022 Decision and Order of the WCJ (WCJ Decision, 2/6/2022), Finding of Fact (F.F.) No. 27. In spite of the injury, Claimant continued to work without wage loss until May 19, 2016. *Id.*, F.F. No. 2. On that date, Claimant underwent a surgical excision to remove a "contusion, blood clot, and mass" that had formed in her right leg following the injury. *Id.* For a period of disability following the surgery, Claimant had been awarded wage loss benefits by a WCJ in a November 28, 2017 decision. *Id.*, F.F. No. 3.

On January 8, 2018, Claimant sustained an injury to her left knee, which aggravated pain symptoms persisting from the previous injury to her right leg. *Id.*, F.F. No. 4. Claimant was again disabled for a period following that injury, for which she sought a reinstatement of the benefits from the prior injury. *Id.* The WCJ to whom the case was assigned credited testimony by Claimant's treating physician that she "continue[d] to suffer from a scar neuroma which created neuropathic pain at the site of her surgery on her right lower leg." *Id.* Following an August 2, 2018 examination, the treating physician restricted Claimant to light duty and ordered her to do no lifting of more than 15 pounds. *Id.* Finding that those restrictions resulted in a loss of earning power, the WCJ reinstated Claimant's wage loss benefits as of the date of that examination. *Id.* The WCJ also amended Claimant's injury description to include a scar neuroma. *Id.*, F.F. No. 81.

2

## B. The Review and Termination Petitions

On August 5, 2020, a WCJ ordered Claimant to undergo an independent medical examination (IME). *Id.*, F.F. No. 5. Based on the results of the IME, which was performed on February 4, 2021, Employer filed a petition to terminate Claimant's benefits (Termination Petition) on March 12, 2021. *Id.*, F.F. No. 56. Employer requested supersedeas, which the WCJ denied in a June 7, 2021 interlocutory order, but also noted that "Employer is only responsible for wage loss benefits that may be payable based on earnings." *See* C.R., Item No. 26. On June 10, 2021, Claimant filed a petition to amend the injury description (Review Petition) to include "a scar associated with a neuroma as well as a nerve injury in the right lower leg." *Id.* at 9.

After consolidating the petitions, a WCJ heard Claimant's testimony as well as deposition testimony by John Ingraham, M.D., her treating physician. *Id.*, F.F. Nos. 11, 27. Employer offered deposition testimony by John Perry, M.D., who performed the February 4, 2021 IME. *Id.*, F.F. No. 56.

At a hearing before the WCJ on June 9, 2021, Claimant testified that she continued to experience burning and throbbing sensations in her lower right leg ever since the 2015 work injury. C.R., Item No. 15, 6/9/2021 Hr'g Tr. at 32-33. Claimant explained that the pain, which she likened to the feeling of a hot fork being pressed into her leg, reoccurred in brief but intense episodes throughout the day. *Id.* at 25. Claimant would need to drop whatever was in her hands upon the onset of the pain, which naturally created difficulties in fulfilling her work duties. *Id.* at 25-26. To treat her pain symptoms, Claimant received a prescription for Lyrica, but could not take it while working due to its tendency to cause sleepiness. *Id.* at 26. Claimant continued to work in spite of the difficulties until September 8, 2021, when she

underwent further surgery to treat her right leg. C.R., Item No. 19, 12/15/2021 Hr'g Tr. at 11. She remained out of work until October 26, 2021, when she resumed working for Employer at full pay, but with restrictions. *Id.* at 11-12.

In his deposition testimony, Dr. Ingraham recalled that he first examined Claimant on November 17, 2020. C.R., Item No. 21, Ingraham Dep. at 6. During the examination, Dr. Ingraham detected tenderness and pain at the site of a depressed scar on her right calf. *Id.* Following the examination and a review of Claimant's medical history, Dr. Ingraham opined that she was suffering from a post-traumatic neuroma as the result of her 2015 work injury. *Id.* at 9. Dr. Ingraham performed outpatient surgery on January 29, 2021, to cut out the offending nerves and minimize Claimant's pain. *Id.* at 10. Claimant continued to complain of pain, but, at a follow-up examination on March 9, 2021, Dr. Ingraham determined that her symptoms were "more consistent with phantom pain"—i.e., "the perception of pain in an area on the body that actually doesn't have feeling any more because [the] nerve has been cut." *Id.* at 11-12. Also at that examination, Dr. Ingraham decided to release Claimant to work with restrictions, including one on the lifting of anything more than 15 pounds. *Id.* at 13.

To address Claimant's pain symptoms, Dr. Ingraham performed an additional operation on September 8, 2021, which he described as a "targeted muscle re-innervation" (TMR). *Id.* at 18. During that operation, Dr. Ingraham "was able to find the saphenous nerve," which he believed was the source of the pain perceived by Claimant, and reconnect it to a different muscle where the same pain would not be triggered. *Id.* at 19-20. Dr. Ingraham acknowledged that the affected area was "several centimeters above the original post-traumatic scar." *Id.* at 19. However,

the affected area did correspond precisely to where Dr. Ingraham performed the previous operation on January 29, 2021. *Id.* at 17.

Dr. Perry recalled at his deposition that, at the February 4, 2021 IME, Claimant presented with a burning sensation in the area where Dr. Ingraham had performed surgery six days before. WCJ Decision, 2/6/2022, F.F. No. 57.[2] Contradicting Dr. Ingraham's diagnoses, Dr. Perry determined following the IME that there was "no evidence . . . of a neuroma." *Id.*, F.F. No. 60. Following a review Claimant's medical records, Dr. Perry further noted that an ultrasound and a magnetic resonance image (MRI) failed to confirm the neuroma's existence. *Id.*, F.F. No. 61. Dr. Perry also reasoned that any neuroma arising from the 2015 work injury would have been observable in April 2017, yet an examination performed at that time did not mention a neuroma. *Id.* at 74. As a result, Dr. Perry disputed that there was a causal connection between the 2015 work injury and the conditions that purportedly necessitated the January 29, 2021 surgery. *Id.*, F.F. No. 66. Dr. Perry further opined that there was no explanation for Claimant's subjective pain complaints from a musculoskeletal standpoint. *Id.*, F.F. No. 68.

In a February 6, 2022 decision, the WCJ denied both Claimant's Review Petition and Employer's Termination Petition. WCJ Decision, 2/6/2022, Order. In his decision, the WCJ credited Claimant's testimony regarding her right leg pain, but expressed "doubt as to the true nature of that pain and its severity." *Id.*, F.F. No. 78. The WCJ based his decision on the grounds that Claimant did not seek treatment from Dr. Ingraham until after she was ordered to undergo an IME, and that her pain complaints were inconsistent across time and between different physicians. *Id.*, No.

---

[2] For unclear reasons, the transcript of Dr. Perry's deposition testimony is omitted from both the agency record sent to this Court and Claimant's reproduced record.

5

F.F. No. 78(a.)-(b.). The WCJ did credit Dr. Ingraham's testimony that a neuroma was present in Claimant's leg, on the ground that Dr. Ingraham personally observed it during the January 29, 2021 operation. *Id.* at 79(a.). However, the WCJ also rejected the notion that the scar and associated pain were caused by her 2015 work injury, noting that the symptoms did not arise until after the January 29, 2021 operation. *Id.* at 79(b.) Thus, although finding that Claimant had not fully recovered from her work injury, the WCJ declined to expand her injury description. *Id.*, F.F. Nos. 81-82. Neither party appealed from the WCJ's decision.

### C. The Notice of Suspension and Penalty Petition

Having been released back to work with restrictions, Claimant resumed working for Employer in a light-duty position on April 27, 2021, without loss in pay. 6/9/2021 Hr'g Tr. at 19-22. Accordingly, Employer filed a Notice of Suspension on April 30, 2021, which announced its intention to suspend Claimant's wage loss benefits as of April 28, 2021.[3] *See* C.R., Item No. 28. The Notice of Suspension explained that Claimant had returned to work at earnings equal to or greater than her pre-injury pay, and included instructions on how to challenge the suspension within 20 days if Claimant disagreed with it. *Id.* On its first page, the Notice of Suspension also bore spaces where Employer's claims representative and a notary public were instructed to sign and notarize the document, but these were left blank. *See id.*

Claimant did not file a challenge of the Notice of Suspension. However, on October 22, 2021, she filed a petition for penalties (Penalty Petition). *See* C.R., Item No. 2. Therein, Claimant noted that she had been out of work ever since her

---

[3] At a hearing on the Notice of Suspension (summarized below), the WCJ acknowledged that the Notice of Suspension was not adjudicated along with the previous petitions because he was unaware of its existence until Employer brought it to his attention. C.R., Item No. 20, 4/6/2022 Hr'g Tr. at 6.

September 8, 2021 surgery, and that she was unable to work or earn income since that date. *Id.* Claimant argued that Employer was liable for penalties due to its refusal to reinstate her wage loss benefits, which was "in direct violation" of the June 7, 2021 interlocutory order, as well as the Act itself. *Id.* (As previously noted, Claimant did return to work on October 26, 2021, with restrictions but earning full pay. 12/15/2021 Hr'g Tr. at 11-12.)

A single hearing on the Notice of Suspension and Penalty Petition took place on April 6, 2022, at which the parties agreed to substitute oral arguments for written briefs. *See* 4/6/2022 Hr'g Tr. at 12-13. Claimant argued that Employer's Notice of Suspension carried no force, as it was neither signed by the claims representative, nor notarized, nor made part of the record when the Termination and Review Petitions were being litigated. *Id.* at 7-8. In addition, Claimant argued that Employer failed to upload a return notification, which would prove service upon Claimant and her counsel, to the Workers' Compensation Automation and Integration System (WCAIS). *Id.* at 7. Claimant further argued that Employer failed to follow Workers' Compensation Bureau (Bureau) guidelines by not entering an Electronic Data Interchange (EDI) transaction when filing the Notice of Suspension.[4] *Id.* at 7. Thus, in Claimant's view, the June 7, 2021 interlocutory order directing wage loss benefits for work-related disability was still in force. *Id.* at 8. Claimant concluded with a request that the WCJ consider a reinstatement of her wage loss benefits for

---

[4] A claims administrator who modifies or suspends benefits via a Notice of Suspension is instructed to file a signed, dated, and notarized copy of the document within seven days of its effective date. DEP'T OF LAB. AND INDUS., ELECTRONIC DATA INTERCHANGE (EDI) CLAIMS IMPLEMENTATION GUIDE, March 2022 (version 25) at 17. "In addition, the required EDI transaction must be filed concurrently with uploading the completed LIBC-751 onto the claim. In order to be complete, both parts (transaction and uploading of the form) must occur." *Id.*

the period between September 8, 2021, and her return to work on October 26, 2021. *Id.* at 14.

In response to Claimant's arguments, Employer countered that the Notice of Suspension became binding when Claimant failed to file a challenge within 20 days of receiving a copy. *Id.* at 11. Regarding the omitted signature and notarization, Employer argued that the Act's normal procedural requirements[5] had been suspended by the Governor's disaster declaration relating to the Covid-19 pandemic. *Id.* at 9; *see also* C.R., Item No. 6, WCJ Decision, 8/3/2022, Appendix A. Employer further countered that the Notice of Suspension's omission from the record in the previous stage of the dispute was immaterial, since it was undisputed that copies were uploaded to WCAIS and served upon Claimant and her counsel. *Id.* at 9-10. Lastly, Employer argued that the June 7, 2021 interlocutory order had no relevance, because its denial of supersedeas only pertained to Employer's Termination Petition. *Id.* at 10-11.

In an August 3, 2022 decision, the WCJ denied Claimant's Penalty Petition and request for a reinstatement of benefits for the seven-week period following her surgery. *See* C.R., Item No. 6, WCJ Decision 8/3/2022, Order. In the WCJ's view,

---

[5] At the time of the Notice of Suspension's issuance, Section 413(c) of the Act provided:

> Notwithstanding any provision of this act, an insurer may suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the [Department of Labor and Industry (Department)], on a form prescribed by the department for this purpose. *The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings.* The insurer must mail the notification of suspension to the employe and the [Department] within seven days of the insurer suspending compensation.

Added by the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.2 (emphasis added).

it was "difficult to ascertain why the unchallenged [Notice] of Suspension should not be considered a fully executed supplemental agreement for the suspension of benefits consistent with Section 413(c) of the Act." *Id.*, Conclusion of Law (C.L.) No. 3(ii). The WCJ explained that it was "particularly" difficult when it was factually established that Claimant was indeed working again and earning her pre-injury wages at the time that the Notice of Suspension was filed. *Id.* Since Claimant did not exercise her right to challenge the document within the allotted 20 days, it became "a binding supplemental agreement" between the parties. *Id.*, C.L. No. 5.

Addressing Claimant's argument that the Notice of Suspension was procedurally defective, the WCJ rejected the contention that any such defects rendered the agreement null and void. *Id.*, C.L. No. 3(v). Neither notarization nor a claims representative signature were needed in April 2021, due to the suspension then in force of those requirements, the WCJ reasoned. *Id.*, C.L. No. 3(i)-(ii). As for Employer's failure to enter an EDI transaction concurrent with the Notice of Suspension's issuance, the WCJ acknowledged the instruction in the Claims Implementation Guide but found no such requirement in the Act or the relevant regulations. *Id*, C.L. No. 3(iv). The WCJ further noted that Employer was not required to upload a returned notification to WCAIS, contrary to Claimant's arguments. *Id.*, C.L. No. 3(iii). Thus, the WCJ concluded, there is no reason to suppose that the Notice of Suspension was voided by any purported procedural error. *Id.*

Lastly, the WCJ rejected Claimant's argument that Employer violated the Act by failing to pay wage loss benefits for the seven weeks following her September 8, 2021 surgery. The WCJ reiterated that the Notice of Suspension was a "valid supplemental agreement" between the parties that no wage loss benefits were due,

and explained that a WCJ lacks the authority to order an interim reinstatement of benefits while that agreement remains in force. *Id.*, C.L. No. 4. The WCJ further noted that in his February 4, 2022 decision, he determined Claimant's September 8, 2021 surgery (and subsequent temporary disability) to be causally unrelated to her 2015 work injury. *Id.*, C.L. No. 5. Thus, even setting aside the Notice of Suspension, "Employer never had a legal obligation to pay wage loss benefits while [Claimant] was out of work following the September 8, 2021 procedure." *Id.* The WCJ therefore concluded that no penalties were to be awarded.

Claimant appealed to the Board, which affirmed the WCJ. *See* C.R., Item No. 10. This appeal followed.[6]

## II. Issues

Claimant argues that, by declining to discuss the merits of her request for temporary reinstatement of wage loss benefits, the WCJ failed to issue a reasoned decision. The WCJ further erred, in Claimant's view, by declining to reinstate wage loss benefits for the period following her recovery from the September 8, 2021 surgery, since there was "no question" that the surgery "was an attempt to resolve the symptoms from her work injury."[7] Claimant's Br. at 13.

---

[6] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

[7] Although the WCJ's denial of Claimant's Penalty Petition lies at the heart of the instant matter, Claimant makes no argument before this Court that the WCJ or the Board erred in declining to award penalties. That issue is therefore omitted from further discussion. *See Shuster v. Workers' Comp. Appeal Bd. (Pa. Hum. Rels. Bd.)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000) (explaining that "the claimant who files the penalty petition must first meet his or her initial burden and prove that a violation of the Act occurred"). However, we note briefly that since our holding

**(Footnote continued on next page…)**

10

### III. Discussion

In pertinent part, Section 422(a) of the Act provides that the parties to an adjudicatory proceeding "are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834(a). A decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the Board without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In providing an adequate basis for appellate review, the WCJ is not required to address all of the evidence presented in a proceeding in his written adjudication; rather, the WCJ must only make findings necessary to resolve the issues raised by the evidence and relevant to the decision. *Green v. Workers' Comp. Appeal Bd. (US Airways)*, 155 A.3d 140, 147-48 (Pa. Cmwlth. 2017).

Instantly, Claimant argues that the WCJ failed to issue a reasoned decision because he "made no statements as to the relevant evidence he relied upon in denying reinstatement of benefits." Claimant's Br. at 11. Furthermore, Claimant avers that the WCJ capriciously disregarded the evidence offered in support of her Review Petition, primarily her testimony "regarding the circumstances of her September 8, 2021 surgery, her inability to return to work during her recovery from September 8, 2021 to October 26, 2021, and her resulting wage loss." *Id.* Claimant therefore asks

---

affirms the decisions below, a consideration of penalties is not warranted. *See Shannon v. Workmen's Comp. Appeal Bd. (City of Erie-Fire Dep't)*, 691 A.2d 1010, 1012 (Pa. Cmwlth. 1997) (explaining that the Act "contemplates an award of penalties only where a claimant has prevailed on the merits of the case").

that this Court remand the matter to the WCJ with instructions to issue a reasoned decision.

Claimant's arguments are without foundation. First, the contention that the WCJ failed to identify the evidence on which he relied is inaccurate. The WCJ's decision contains a thorough discussion of the evidence that factored into his reasoning, above all the Notice of Suspension by which both parties agreed that Claimant's benefits were to be suspended. As the WCJ noted, it is "difficult to ascertain" why such an agreement should be disregarded when Claimant made no objection to it, and when it is undisputed that Claimant was working again for her pre-injury wages at the time that it was issued. WCJ Decision, 8/3/2022, C.L. No. 3(ii). The WCJ was under no obligation to consider all evidence presented, especially evidence—such as Claimant's testimony on her September 8, 2021 surgery and subsequent recovery—in support of a petition that has already been adjudicated. If Claimant wished to challenge the WCJ's previous determination that her September 8, 2021 surgery was not work-related, the appropriate method would have been to file an appeal of that decision to the Board. Furthermore, the WCJ carefully addressed each of Claimant's procedural objections to the Notice of Suspension and explained in detail why none of its alleged defects rendered the agreement void. Claimant thus fails to establish why meaningful appellate review is in any way hindered by the WCJ's decision.

Next, we address Claimant's contention that the WCJ erred in failing to reinstate wage loss benefits for her absence from work from September 8, 2021, until October 26, 2021. A claimant seeking reinstatement of benefits that have been suspended due to her return to work must prove that through no fault of her own, her earning power is once again adversely affected by the work-related injury and that

the disability giving rise to her original claim continues. *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548, 551-52 (Pa. 2010). When a claimant satisfies both of those elements, the burden shifts to the employer to establish that the disability was not due to her work injury, or that the claimant's loss of earnings was caused by her bad-faith refusal of available work. *Id.* at 558. A presumption exists that the continuing injury is the same as that which caused the original disability. *Bethlehem Steel Corp. v. Workers' Comp. Appeal Bd. (Laubach)*, 760 A.2d 378, 380 (Pa. 2000). Once a claimant testifies that his or her prior work-related injury continues, the burden shifts to the employer to prove the contrary. *City of Harrisburg v. Workers' Comp. Appeal Bd. (Palmer)*, 877 A.2d 555, 559 (Pa. Cmwlth. 2005).

Instantly, Claimant argues that there is "no question the surgery was an attempt to resolve the symptoms from her work injury." Claimant's Br. at 13. In support, Claimant points to the June 7, 2021 interlocutory order denying supersedeas as the establishment of a responsibility of Employer to pay for wage loss benefits for disability caused by her work injury. Claimant maintains that Employer's refusal to pay wage loss benefits for her seven-week absence from work following her September 8, 2021, surgery constitutes illegal self-help and a disregard of the WCJ's clear orders. In support, Claimant cites *Graves v. Workmen's Compensation Appeal Board (LaFrance Corp.)*, 680 A.2d 49, 51 (Pa. Cmwlth. 1996), for the proposition that "absent a supersedeas, the burden remains on the employer to continue to pay compensation during the litigation period."

Claimant's arguments are, again, unpersuasive. As the WCJ explained in the decision below, the Notice of Suspension constituted a valid supplemental agreement between the parties, which the WCJ lacked authority to undo with an

13

interim reinstatement order. WCJ Decision, 8/3/2022, C.L. No. 4. Contrary to Claimant's arguments, the June 7, 2021 interlocutory order denying supersedeas clearly limited Employer's obligation to "wage loss benefits that may be payable based on earnings," i.e., those due as the result of a work-related injury. *Graves* is therefore inapposite, as the employer in that case had ignored a WCJ's order *reinstating* total disability benefits retroactively, pending consideration of the employer's petition to terminate those benefits. 680 A.2d at 51. In this instance, where no reinstatement order existed, the burden remained on Claimant to prove the two elements set forth in *Bufford*. Since the WCJ's February 6, 2022 decision already rejected the contention that her temporary absence from work following the September 8, 2021 surgery was work-related, the WCJ did not err in ruling subsequently that Employer was not responsible for wage loss benefits for that period.

## IV. Conclusion

For the foregoing reasons, we affirm the Board.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Veronica North,                          :
                    Petitioner           :
                                         :
        v.                               :   No. 627 C.D. 2023
                                         :
GHG, LLC (Workers' Compensation          :
Appeal Board),                           :
                    Respondent           :

# **O R D E R**

AND NOW, this 5th day of June, 2024, the order of the Workers'
Compensation Appeal Board in the above-captioned matter, dated May 16, 2023, is
AFFIRMED.

_____
ELLEN CEISLER, Judge