# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Staton,                              :
                    Petitioner              :
                                            :
          v.                                :    No. 1648 C.D. 2019
                                            :    Submitted: May 1, 2020
Workers' Compensation Appeal Board          :
(System One Holdings, LLC),                 :
                    Respondent              :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE J. ANDREW CROMPTON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  December 14, 2020**

Michael Staton (Claimant) petitions for review of the Workers' Compensation Appeal Board's (Board) Order that affirmed the Decision of a Workers' Compensation Judge (WCJ) granting Claimant's Claim Petition in part and directing System One Holdings, LLC[1] (Employer) to pay Claimant temporary total disability benefits and medical benefits, but terminating those benefits as of November 9, 2016, based on Claimant's full recovery from that work-related injury.  The WCJ authorized Employer to take a credit for any workers' compensation (WC) benefits it had paid to Claimant, a New Jersey resident, under that state's WC laws.  The WCJ granted Claimant's Penalty Petition, imposing a

_____

[1] Employer is also referred to as Joule Systems in the record.

$500.00 penalty due to Employer not timely issuing required documentation. The WCJ further found Employer's contest of the Claim Petition unreasonable until November 9, 2016, the date Employer obtained evidence that Claimant fully recovered from his work-related injury, and, therefore, awarded Claimant attorney's fees in the amount of $1,050.00. On appeal, Claimant argues the Board erred in affirming because: (1) the Board did not properly perform its appellate review; (2) the WCJ abused her discretion and violated Claimant's due process rights in the handling of the proceedings; (3) the WCJ capriciously disregarded overwhelming evidence and made credibility determinations and factual findings that were unsupported by the entire record; (4) the WCJ abused her discretion by imposing a penalty that was too low in light of Employer's violations; and (5) the WCJ arbitrarily reduced Claimant's counsel's quantum meruit fee. Upon careful review and discerning no error of law, abuse of discretion, or constitutional violation, we affirm.

## I.    Background

We begin by noting that there is no dispute as to what occurred to Claimant in this matter: on August 25, 2016, he struck his head on a pipe while attempting to escape from a burst water pipe while he was working for Employer at a location in Bristol, Pennsylvania. Employer issued an incident report stating that Claimant "jammed" his "neck/head" as a result of his "turn[ing] and r[unning] into an I[-b]eam and was knocked to the ground jamming neck back [sic]" and that he was wearing a hard hat at the time. (Reproduced Record (R.R.) at 19a-21a.) The incident report further noted Claimant was authorized to receive and did receive medical treatment at the emergency room of Aria Health Hospital (Aria Health). (*Id.* at 20a.)

2

*A. Proceedings before the WCJ.*

Claimant filed the Claim Petition on September 12, 2016, asserting he sustained disabling work-related injuries in the nature of "head, neck shoulder down right arm [sic], [and an] aggravation of pre[]existing condition." (*Id.* at 24a-25a.) Employer timely filed an Answer denying the material allegations but "averr[ing] that Claimant is presently receiving [WC] benefits under the New Jersey [WC] Act.[2]" (*Id.* at 30a-31a.) The Claim Petition and Penalty Petition were assigned to the WCJ, who held hearings.

At an October 26, 2016 hearing, the WCJ indicated, based on off-the-record discussions between the parties, that "there[ was] no dispute amongst the parties that Pennsylvania has jurisdiction and that the injury is, in fact, compensable based on the fact that it's been picked up in New Jersey." (*Id.* at 5a.) The WCJ further stated Employer would obtain an examination of Claimant to determine "whether [] Employer [was] in a position to agree to Claimant's allegation that [it] somehow [would] accept the claim in Pennsylvania or whether there's going to be an ongoing dispute." (*Id.*) Finally, following an off-the-record discussion, the WCJ indicated Claimant was now "asserting a claim for unreasonable contest" as a part of his Claim Petition. (*Id.*)

After the October 26, 2016 hearing, Claimant filed the Penalty Petition on October 28, 2016, asserting Employer violated Pennsylvania's Workers' Compensation Act[3] (Act), rules, or regulations by failing to timely accept or deny the claim, timely pay benefits, or pay Claimant the correct amount of benefits. (*Id.* at 35a.) Employer filed an Answer to the Penalty Petition, denying the material

---

[2] 34 N.J. St. 34:15-1-34:15-146.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

allegations and asserting "[t]his matter was timely accepted and paid in New Jersey where jurisdiction exists based on residence of Claimant, domicile of Employer[,] and contract of hire" and Claimant's "[b]enefits were paid at the maximum rate in New Jersey." (*Id.* at 39a.) It was after this hearing that Claimant filed his Penalty Petition. In relation to his unreasonable contest claim, Claimant submitted a request, dated October 28, 2016, for the WCJ to issue a subpoena to compel the testimony of his claim representative with Employer's insurer. (*Id.* at 42a.) Employer objected because "Claimant had no burden of proof with respect to unreasonable contest[s]" and was asking to obtain evidence on an issue that is not a part of his case with the "true intention [of] badger[ing] the claim representative." (*Id.* at 47a-48a.) The WCJ denied the subpoena request by letter dated November 1, 2016. (*Id.* at 49a.)

Another hearing was held on February 22, 2017, at which the WCJ explained that, at the first hearing:

> [she] was advised by Claimant's counsel that this is a medical issue only and that Claimant's testimony would not be germane to the case based on the fact that the injury was acknowledged, in part, through New Jersey law. So we know that the injury took place, we know the nature of the injury somewhat.
>
> While there might be a dispute as to the additional injuries that may have incurred, we do have an acknowledgment that there was money that exchanged hands based upon the acknowledgment in New Jersey. I understand that going forward we understood there to be a jurisdictional issue here. [Employer's counsel] has stated off the record that there is no jurisdiction issue. He concedes Pennsylvania jurisdiction of the case and now we can move forward on the issue of ongoing disability associated with this injury of August 25th, 2016.

(*Id.* at 12a-13a.) Also at this hearing, it was determined Claimant would testify by deposition, "be examined by a doctor who [could] better assess the head trauma

sustained," and would move forward with his claims for head injuries with his expert, Kishor Patil, M.D., and for his orthopedic injuries with Zohar Stark, M.D. (*Id.* at 13a.)  The WCJ authorized Employer to obtain an additional independent medical examination (IME) based on Claimant's head trauma claims, which was to occur "in the next 30 days," and Employer indicated it was scheduled for February 27, 2017.  (*Id.* at 13a, 15a.)  The WCJ relisted the matter for Claimant to present his case in chief, including his deposition and his medical evidence, in 90 days. (*Id.* at 14a.)

Claimant testified by trial deposition on March 24, 2017,[4] describing:  his work duties; the events of August 25, 2016, including that he had lost consciousness; the treatment he sought through the present, including at both Aria Health and Cooper University Hospital Department of Emergency Medicine (Cooper Hospital); and the symptoms he experienced and continues to experience. Claimant denied having told anyone at Aria Health on August 25, 2016, that he did not lose consciousness.  (*Id.* at 58a-59a.)  He said he was unable to perform his full-duty work following the injuries due to both physical and cognitive limitations, including pain in his lower and mid back, neck, and arm, numbness in his right arm, and inability to think clearly.  (*Id.* at 64a-66a, 82a.)  Claimant acknowledged having ongoing medical issues with and receiving treatment for his lower back and neck with Joan O'Shea, M.D.  Claimant stated he received medical treatment from Dr. O'Shea for his arm and neck in May 2016, at which time he said he was feeling 85% better, no further medical treatment was scheduled, and he felt he could perform his full-duty position without restrictions.  (*Id.* at 63a-64a.)

---

[4] Claimant's deposition is found at pages 51a-123a of the Reproduced Record and is summarized in finding of fact 2.

Claimant described his current symptoms as being a lump in his neck, pain in the neck that shoots down into his right arm, and pain in his lower and mid back. (*Id.* at 66a-67a.) He acknowledged that Employer paid him WC benefits in New Jersey in the amount of "almost" $3,500.00 per month, but stated there was no indication as to how long those benefits would last and he had last received a check on February 28, 2017. (*Id.* at 77a-78a.)

On cross-examination, Claimant agreed his medical reports from May 26, 2016, reflected that he "complain[ed] of continued lower back pain extending to the right leg with associated numbness" and "neck pain extending to the right arm with associated headaches which [was] causing him to have trouble sleeping." (*Id.* at 90a.) That medical report also stated "[h]e fe[lt] as if his whole spine [was] dead" and "[h]is symptoms seem[ed] to be worsening," but Claimant indicated in his deposition he did not believe that they were worsening at that time. (*Id.* at 91a, 93a.) Claimant agreed past medical records revealed he had been taking pain medication "for ages," including 800 mg of Ibuprofen 2 to 4 times a day, and he could not remember when he had an epidural steroid injection in his back or neck but remembered, when prompted, that he had a cervical injection on June 25, 2016. (*Id.* at 93a, 96a-97a, 101a.) He also acknowledged that he rated his pain level as a 7 to 8 out of 10 and complained of "neck pain that radiated or extended into the back of [his] head and [his] right shoulder blade and [his] right upper extremity," "stiffness, . . . spasm[,] . . . restricted range of motion in [his] neck," and "numbness and tingling in [his] right hand" during a June 7, 2016 doctor's appointment. (*Id.* at 98a-99a.)

Claimant subsequently testified before the WCJ on August 22, 2017.[5] He described the August 25, 2016 incident in further detail and stated he had been feeling better during the three-month period before the incident. Claimant admitted, however, he received a pain injection in his back on July 8, 2016. (*Id.* at 699a, 703a.) He again acknowledged receiving WC benefits in New Jersey, with the last payment being in March 2017. (*Id.* at 701a.)

In support of his orthopedic injuries, Claimant presented the deposition testimony of Dr. Stark, an orthopedic surgeon who first examined Claimant on September 13, 2016.[6] Dr. Stark testified that Claimant provided a history of headaches, neck pain, numbness and tingling in his upper extremities, low back pain radiating into his right knee and tingling in his right thigh, lower extremity weakness, and left thigh numbness. Based on his examination of Claimant and Claimant's medical records, Dr. Stark diagnosed Claimant with right shoulder contusion, a cervical spine sprain and strain, cervical radiculopathy, an aggravation to "pre[]existing symptomatology related to disc disease and joint disease of [Claimant's] cervical spine," and lumbar spine sprain "with aggravation of pre[]existing symptomatology related to [Claimant's] pathology in the lumbar spine." (WCJ Decision, Finding of Fact (FOF) ¶ 5b; R.R. at 158a.) Dr. Stark related these injuries to the August 25, 2016 work incident. Dr. Stark did not examine Claimant again until January 24, 2017, at which time he reviewed an electromyography (EMG) test performed by Dr. Patil that revealed, according to

---

[5] Claimant's testimony before the WCJ is found at pages 698a-706a of the Reproduced Record and is summarized in finding of fact 4.

[6] Dr. Stark's deposition is found at pages 145a-203a of the Reproduced Record and is summarized in finding of fact 5.

Dr. Stark, right-sided radiculopathy at C5, C6, and C7, as well as bilateral radiculopathy at L4-5.

On cross-examination, Dr. Stark acknowledged Claimant's ongoing treatment with Dr. O'Shea and that Claimant's hospital records from August 25, 2016, indicated only injuries to Claimant's neck and right arm and that Claimant was discharged with a diagnosis of neck pain and parethesias, with no diagnoses related to Claimant's head, low back, or shoulders. Dr. Stark compared an August 25, 2016 magnetic resonance imaging (MRI) test to a prior MRI of Claimant performed on February 12, 2016, and observed that the findings relating to Claimant's C3-4 disc appeared on both tests and that Claimant had substantial preexisting lumbar spine pathology. After reviewing Dr. O'Shea's medical records from May 26, 2016, Dr. Stark agreed that the complaints Claimant made during the September 13, 2016 examination were the same as those in Dr. O'Shea's records and for which Claimant had undergone cervical epidural injections prior to August 25, 2016. Dr. Stark also agreed that an EMG study from March 2016 demonstrated right-sided C5 radiculitis, which is what Claimant presented with in September 2016.

In support of his neurologic claims, Claimant presented the deposition testimony of Dr. Patil, who first examined Claimant on August 30, 2016.[7] Following this examination, Dr. Patil indicated he detected a "6[th] nerve palsy" and diagnosed Claimant with "post-traumatic cervical strain and sprain syndrome with cervical entrapment, radicular features bilaterally, post[-]traumatic lumbosacral strain/sprain, post-concussion syndrome, and post[-]traumatic

_____

[7] Dr. Patil's deposition is found at pages 214a-263a of the Reproduced Record and is summarized in finding of fact 6.

cephalgia." (FOF ¶ 6a; R.R. at 227a.) Dr. Patil related all of these to the August 25, 2016 incident. He subsequently performed an EMG and "brain mapping study," the former showing right C7 radiculopathy and the latter showing "abnormality in the left mid-temporal area." (FOF ¶ 6b; R.R. at 233a.) On cross-examination, Dr. Patil admitted the 6th nerve palsy, which would reflect a considerable injury, was not detected in any other examinations of Claimant. He acknowledged that Claimant did not inform him of any prior symptomatology, including right arm and hand numbness, but was able to glean from Claimant's medical records that Claimant had preexisting cervical radiculopathy for which Claimant received treatment from Dr. O'Shea. Dr. Patil did not review any MRIs performed before the August 25, 2016 incident.

Claimant also presented the August 25, 2016 emergency room records from Aria Health and August 26, 2016 records from Cooper Hospital.[8] Aria Health's records revealed, the WCJ found, that Claimant's discharge diagnosis was "neck pain, paresthesia." (FOF ¶ 7a.) A body chart showed Claimant complained of neck and right arm pain, with no other body area marked. The records showed Claimant had a history of back pain and neuropathy and was taking Ibuprofen and Gabapentin. The records indicated that "patient did not have loss of consciousness" and "denie[d] back pain, bladder or bowel incontinence, bladder or bowel retention, vision changes, speech changes, dizziness, light headiness [sic], focal weakness, nausea, headache or any other symptoms." (*Id.* ¶ 7d.) Cooper Hospital's records showed, the WCJ found, that Claimant reported a history of chronic right radicular and neck pain for which he was receiving pain management

---

[8] These medical records are found at pages 265a-319a of the Reproduced Record and are summarized in findings of fact 7 and 8.

and epidurals. As for the events of August 25, 2016, Cooper Hospital's records indicated Claimant "lost consciousness 'for a few seconds'" and was having worsening blurring vision, dizziness, headache, right extremity pain and paresthesia. (*Id.* ¶ 8a.) Claimant's "systems" review noted "negative for myalgias, back pain, joint swelling, arthralgias, gait problem[,] and neck pain," "positive for numbness and headaches," and "[n]egative for dizziness, syncope, weakness[,] and light headiness [sic]." (*Id.* ¶ 8b.) Claimant's physical examination reflected Claimant was

> alert and oriented to person, place and time. He ha[d] normal strength. He [was] not disoriented. No cranial nerve deficit or sensory deficit. He exhibit[ed] normal muscle tone. Coordination and gait, normal. No focal neural deficit. Reflex [was] normal and symmetric bilaterally. Cerebellar coordination testing intact including finger to nose and shin to heel. Upper extremity and lower extremity strength 5/5 bilaterally. Sensation to touch decreased left upper extremity compared to right. Normal gait.

(*Id.* ¶ 8c.)

Employer presented the testimony of its Safety Director and a Co-Worker who was working with Claimant on August 25, 2016.[9] Safety Director explained Claimant called him on August 25, 2016, to report what happened and that Claimant had "jammed his neck" but did not report any injury. (*Id.* ¶ 9a.) Safety Director completed the Incident Report based on that conversation and allowed Claimant to edit the document to include only "jammed neck/head." (*Id.* ¶ 9b.) Co-Worker testified that after the pipe broke, he observed "Claimant sitting on the

---

[9] These witnesses' testimonies are found at pages 659a-697a of the Reproduced Record and are summarized in findings of fact 9 and 10(1). The WCJ's Decision contains two findings of fact 10, as such we refer to the first as 10(1).

ground, leaning against a column," and another co-worker helped Claimant up. (*Id.* ¶ 10(1)b.)

In opposition to Claimant's orthopedic claims, Employer offered the deposition testimony of Richard G. Schmidt, M.D., a board-certified orthopedic surgeon, who performed an IME of Claimant on November 9, 2016.[10] At that examination, Claimant reported he had been "knocked unconscious and fell into a pool of water" and complained of a neck injury with pain radiating into his right arm, right arm numbness, and numbness in his right thigh. (*Id.* ¶ 10a, 10b.) Claimant denied having any complaints in his lower back or that he injured his lower back on August 25, 2016. Claimant told Dr. Schmidt that Claimant had jammed his neck five or six years before the current injury but the symptoms from the prior injury had resolved. Dr. Schmidt indicated his review of various diagnostic tests revealed the following: a September 27, 2009 MRI showed significant degenerative changes to the cervical spine; Claimant's February 12, 2016 and October 19, 2016 lumbar MRIs showed Claimant's condition as the same; and MRI films of Claimant's cervical spine from September 27, 2009, and December 15, 2015, revealed chronic changes at C3 through C7, and Claimant's August 25, 2016 cervical MRI was consistent with these past MRIs. Dr. Schmidt also reviewed Claimant's medical records and noted the following. Claimant complained to Dr. O'Shea in January 2016 of unbearable pain, with "right-sided pressure in his head and headaches[,] . . . numbness in his right hand, [and] pain down the right arm." (R.R. at 392a.) In March 2016, Claimant complained of neck, low back, and right arm pain, and in May 2016 of arm and leg pain,

---

[10] Dr. Schmidt's deposition is found at pages 357a-435a in the Reproduced Record and is summarized in finding of fact 10.

headaches, extremity numbness, back pain radiating into his right leg, and neck pain radiating into his right arm. Claimant told Dr. O'Shea in May 2016 that Claimant's spine was "dead" and the symptoms were becoming worse. Dr. O'Shea diagnosed Claimant on May 26, 2016, with herniated discs from C3 through T1, neck and arm pain, "low back pain and right leg pain, biforaminal stenosis at 4-5 suggesting continued lumbosacral facet and radio frequency ablation." (*Id.* ¶ 10e.) Per the medical records, Claimant received various nerve blocks and epidural steroid injections at different levels of Claimant's lumbar and cervical spine in 2016 prior to the work injury. Based on his examination of Claimant and review of Claimant's diagnostic testing and medical records, "Dr. Schmidt opined that Claimant had the same physical complaints before August 25, 2016[,] as he did after." (*Id.* ¶ 10f.) Dr. Schmidt further concluded that Claimant had not sustained any injury due to the August 25, 2016 incident and, even if Claimant had, Claimant had fully and completely recovered from any injury.

In opposition to Claimant's neurological claims, Employer presented the deposition testimony of Richard H. Bennett, M.D., a board-certified neurologist, who performed an IME of Claimant on February 27, 2017.[11] Dr. Bennett reviewed a computerized tomography (CT) scan of Claimant's brain and a cervical spine MRI from August 25, 2016, and opined that the CT scan was normal and the MRI reflected degenerative changes that were consistent with degenerative spondylosis. Dr. Bennett also compared Claimant's EMG studies from 2011, 2014, and February 2016, with the September 23, 2016 EMG study and concluded they were similar and consistent with each other. He also compared Claimant's August 25,

___

[11] Dr. Bennett's deposition is found at pages 495a-578a of the Reproduced Record and is summarized in finding of fact 11.

12

2016 cervical spine MRI to Claimant's pre-accident cervical MRIs and noted that the MRIs showed degenerative changes at almost all cervical levels. Reviewing Dr. O'Shea's records, Dr. Bennett opined that, prior to August 25, 2016, Claimant suffered from severe and chronic pain for years. He noted Claimant had complaints of headaches, neck pain, lower back pain, right arm pain, and right leg pain in January 2016. The records also showed, Dr. Bennett stated, that Claimant saw a pain management specialist in June 2016, at which time he complained of neck pain that radiated into the right arm with paresthesia and low back pain radiating into his right leg, and he described that pain as being severe, sharp, and stabbing. Dr. Bennett opined that "brain mapping" studies, like the one Dr. Patil performed, are not accepted diagnostic procedures, and that there was no indication in the emergency room records of Claimant suffering a 6th nerve palsy following the August 25, 2016 incident. Based on his examination of Claimant and review of the diagnostic tests and medical records, Dr. Bennett opined that Claimant had fully recovered from any injury Claimant may have sustained on August 25, 2016.

Reviewing this evidence, the WCJ made the following credibility determinations. The WCJ found Claimant credible in part, accepting Claimant's testimony that he hit his head on a pipe while evacuating on August 25, 2016. However, as to Claimant's testimony relating his current symptoms, the WCJ found this testimony was contradicted by Claimant's "medical records in evidence, as testified to by the medical experts, that [showed] Claimant had identical complaints related to the same body parts prior to the work injury." (FOF ¶ 12.) The WCJ noted Claimant was treated for "ongoing neck pain radiating into his right arm and paresthesias," a few months before the work injury, and had "a cervical medial branch block for chronic pain" a month before the work injury.

13

(*Id.*) As for Employer's fact witnesses, Safety Director and Co-Worker, the WCJ found them credible regarding the events of August 25, 2016, which supported the grant of the Penalty Petition because "clearly Employer had notice of Claimant's injury on the day that it occurred and yet failed to file proper Bureau [of WC] documents timely." (*Id.* ¶ 13.)

The WCJ then addressed the credibility of the expert medical testimony. The WCJ rejected Dr. Patil's testimony in its entirety, explaining that none of the emergency room records referred to any back injury or 6th nerve palsy on August 25, 2016. (*Id.* ¶ 14.) The WCJ accepted Dr. Stark's opinion that Claimant sustained a cervical sprain and strain on August 25, 2016, that required emergency care, but rejected the opinion that Claimant suffered any other injuries, including an aggravation of pre-existing conditions, given "Claimant's extensive pre-existing symptomatology and treatment to the same body parts alleged in [the] Claim Petition." (*Id.*) The WCJ found Dr. Bennett's testimony credible in part, explaining Dr. Bennett persuasively testified, based on Claimant's medical records, as to the seriousness of Claimant's prior complaints, which required invasive pain management, including to his cervical spine as recently as July 8, 2016.[12] (*Id.* ¶ 15.) Dr. Bennett also persuasively explained there were no changes in the objective studies of Claimant's lumbar and cervical spine between those taken before the injury and after the injury. The WCJ credited Dr. Bennett's opinion that Claimant fully recovered from any injuries Claimant sustained on August 25, 2016. Finally, the WCJ found Dr. Schmidt's testimony credible in part, rejecting Dr. Schmidt's testimony that no injury to Claimant's neck occurred "in light of the

_____

[12] The WCJ used "July 8, 201**7**" in this finding of fact, but the other findings of fact reflect that this injection occurred on July 8, 201**6**.

14

emergency room records, the incident report[,] and Claimant's testimony" but accepting Dr. Schmidt's opinion of full recovery from any such work-related injury as of November 9, 2016, the date of Dr. Schmidt's examination. (*Id.* ¶ 16.) For these reasons, the WCJ concluded that Claimant met his burden of proving that he sustained a work-related cervical sprain and strain that resulted in him being disabled from employment until November 9, 2016, at which time Claimant had fully recovered from that injury. (WCJ Decision, Conclusion of Law (COL) ¶ 2.)

The WCJ concluded that Employer's contest of the Claim Petition was unreasonable until November 9, 2016, the date of Dr. Schmidt's IME, because until that "opinion was rendered, Employer had no reason to deny all allegations set forth in Claimant's petition based upon having notice of Claimant's injury on the date of the injury and having paid New Jersey benefits prior to this litigation." (*Id.* ¶ 4.) As to the amount of that fee, the WCJ reviewed Claimant's counsel's quantum meruit document, which reflected an hourly rate of $360.00. (R.R. at 354a.) The WCJ found that, prior to November 9, 2016, counsel had expended seven billable hours but used "a rate of $150.00 per hour, based upon this specialty of law, for a total of unreasonable contest fees of $1050.00 payable to Claimant." (FOF ¶ 17.) Similarly, the WCJ concluded Claimant met his burden of proving that Employer violated Section 406.1 of the Act[13] by not issuing a Notice of Compensation Payable (NCP) or Notice of Compensation Denial (NCD) within 21 days of receiving notice of Claimant's injury. (COL ¶ 3.) The fact that Claimant received benefits in New Jersey did not relieve Employer of its obligations under

---

[13] Section 406.1 was added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1.

15

the Act. Nevertheless, the WCJ found that Claimant was not prejudiced because he had received New Jersey's WC benefits.

In sum, the WCJ granted the Claim Petition in part, awarding Claimant medical and temporary total disability benefits from August 25, 2016, until November 9, 2016, at which time benefits were terminated based on Claimant's full recovery. Because Employer paid Claimant benefits in New Jersey, the WCJ held Employer was entitled to a credit for those benefits. The WCJ granted the Penalty Petition and imposed a penalty of $500.00. Finally, the WCJ directed Employer to pay $1,050.00 in quantum meruit fees. Both Claimant and Employer appealed to the Board.[14]

### B. The Board's Opinion.

Claimant's appeal to the Board challenged numerous findings of fact because "there [were] substantial, material omissions, inconsistencies, and excerpts of testimony summarized out of context, which adversely affected the ultimate credibility determinations." (R.R. at 733a-34a.) Claimant also challenged the credibility determinations as being either "based on an incorrect/incomplete summary of the evidence" or without being supported by the required objective reasoning. (*Id.* at 734a.) Claimant further objected to the WCJ's unilateral reduction of his counsel's hourly rate, and that the WCJ did not make any factual findings "regarding the medical evidence concerning the injury to [C]laimant's head," and, therefore, capriciously disregarded that evidence. (*Id.*) Claimant additionally challenged the WCJ's conclusions regarding the extent of Claimant's

---

[14] Although Employer appealed to the Board, its appeal is not relevant to this matter because Employer does not challenge the Board's decision in this Court. Thus, we will not discuss the issues Employer raised before the Board.

injuries and disability, that Claimant was not prejudiced by Employer's violation of the Act, and that a subsequently obtained medical examination can turn an unreasonable contest into a reasonable one. (*Id.*) Claimant asserted that "[h]ad the [WCJ] issued the Decision based solely on the issues initially 'contested' by [Employer], rather than permitting a full-blown litigation of the nature and extent of injuries, the outcome of this case would likely have been significantly different." (*Id.*)

The Board disagreed that the WCJ failed to issue a reasoned decision due to a capricious disregard of material evidence or an inadequate explanation for her credibility determinations. Initially, it noted that Employer was entitled to credit for the New Jersey benefits it paid, as reflected in Claimant's testimony that he received almost $3,500.00 a month for the work injury. (Board Opinion (Op.) at 2 n.2.) The Board explained a reasoned decision must contain findings of fact and conclusions of law based on the whole record that clearly and concisely explain the WCJ's rationale for how the result was reached and allow for adequate appellate review. (*Id.* at 3 (citing *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003)).) Reviewing the WCJ's Decision, the Board held the WCJ adequately explained her credibility determinations. The Board held the WCJ provided reasons for not crediting Claimant's testimony regarding his medical history, even though Claimant testified live before the WCJ and, therefore, no explanation for such determination was necessary. With regard to the credibility of the medical experts, the Board held the WCJ's explanations, which were based on the experts' review of Claimant's medical records and the results of Claimant's objective studies, were adequate to allow the Board to determine how the WCJ reached her conclusion. (*Id.* at 9-11.) Citing *Green v. Workers'*

*Compensation Appeal Board (US Airways)*, 155 A.3d 140 (Pa. Cmwlth. 2017), the Board rejected Claimant's assertion that a WCJ must address all the evidence presented to issue a reasoned decision; rather, the WCJ "must make findings that resolve the issues raised by the relevant evidence." (Board Op. at 11.) The Board observed that, although Claimant asserted a capricious disregard of the evidence, Claimant did not explain what was missing from the WCJ's Decision. The Board reviewed the record and concluded the "WCJ summarized the relevant evidence[] and . . . did not make any material omissions in rendering those summaries." (*Id.*) Because those summaries were adequate, the Board held Claimant's arguments that material omissions had a negative impact on the WCJ's credibility determinations were moot. (*Id.* at 11 n.5.) For these reasons, the Board held the WCJ's Decision satisfied the Act's reasoned decision requirements.

The Board then addressed Claimant's arguments that the WCJ erred in reducing Claimant's counsel's hourly fee and in finding that Employer's contest became reasonable as of November 9, 2016. First, the Board held it is the WCJ that must make factual findings regarding the value of quantum meruit counsel fees to be imposed and has the authority to determine what constitutes a reasonable fee in the first instance. (*Id.* at 12 (citing *Hartman v. Workmen's Comp. Appeal Bd. (Moyer Packing Co.)*, 636 A.2d 1245 (Pa. Cmwlth. 1994); *Eugenie v. Workmen's Comp. Appeal Bd. (Sheltered Emp. Serv.)*, 592 A.2d 358 (Pa. Cmwlth. 1991)).) The Board found no error by the WCJ in her conclusion that a reasonable hourly rate was $150.00, rather than the $360.00 asserted by Claimant's counsel, reasoning "[t]he WCJ had the authority to determine what constituted a reasonable fee, and she explained that she based the attorney fee on Claimant's attorney's specialty of law." (*Id.* at 13.) Second, the Board held that, contrary to Claimant's

18

contentions, an unreasonable contest can become reasonable at a later point in the litigation, such as when an employer provides an IME that conflicts with a claimant's medical evidence, thereby cutting off an employer's exposure to unreasonable contest fees. (*Id.* at 12-13 (citing *Costa v. Workers' Comp. Appeal Bd. (Carlisle Corp.)*, 958 A.2d 596 (Pa. Cmwlth. 2008); *Crouse v. Workers' Comp. Appeal Bd. (NPS Energy SVC)*, 801 A.2d 655 (Pa. Cmwlth. 2002)).)

Last, the Board addressed Claimant's contention that he was entitled to more than the $500.00 penalty awarded by the WCJ, agreeing Claimant established Employer violated the Act by not timely filing proper documentation with the Bureau. However, holding that the imposition and amount of penalties under Section 435 of the Act,[15] 77 P.S. § 991, was within the WCJ's discretion, the Board found there was no error in the WCJ's exercising her discretion to award a $500.00 penalty. (*Id.* at 14-15.)

For all these reasons, the Board affirmed the WCJ's Decision and Order. Claimant now petitions this Court for review. [16]

## II. Discussion

On appeal, Claimant challenges almost every aspect of the WCJ's Decision and handling of this matter, as well as the Board's review of the WCJ's Decision. Claimant argues the WCJ violated his constitutional right to due process during the proceedings and erred in making him prove all of the facts necessary to establish an entitlement to benefits where Employer did not contest that entitlement in its

---

[15] Added by Section 3 of the Act February 8, 1972, P.L. 25.

[16] This Court's scope of review in WC appeals "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

entirety. Claimant further asserts the WCJ's factual findings, credibility determinations, and legal conclusions were not supported by substantial, competent evidence but were based on a capricious disregard of overwhelming evidence. This, Claimant contends, means the WCJ did not issue a reasoned decision. In addition, Claimant challenges the WCJ's reduction of Claimant's counsel's hourly rate in calculating the amount of unreasonable contest fees due and in not awarding the entirety of Claimant's counsel fees as a result of the unreasonableness of Employer's contest. Employer responds the Board properly performed its appellate review, the WCJ committed no constitutional violations, the WCJ's Decision was fully supported by the record and was reasoned, there was no error in the WCJ's legal conclusions, and there was no abuse of discretion in regard to the amount of penalty or unreasonable contest fees awarded by the WCJ.

### A. *Whether the Board's review of Claimant's appeal was erroneous.*

Claimant first argues the Board erred by limiting its review to only whether there was substantial evidence to support the WCJ's findings rather than ascertaining whether the WCJ's Decision was capricious because it was "without a rational basis or scheme" or was "so flagrant as to be repugnant to a man of reasonable intelligence." (Claimant's Brief (Br.) at 19 (internal quotations, citations, and emphasis omitted).) Claimant maintains the Board erred by not reviewing the WCJ's findings and credibility determinations to ensure that they were "actually supported by the Record as a whole – and in context," rather than by "[p]erforming a cursory review, to make sure that the evidence cited by the [WCJ] does exist in the [r]ecord." (*Id.* at 20 (emphasis omitted).) Employer responds that the Board applied the correct legal standard for reviewing the WCJ's Decision, citing generally the standards for appellate review.

The questions Claimant raised in his appeal to the Board required the Board to review the record and the WCJ's factual findings to determine if they were supported by substantial evidence, if they represented a capricious disregard of overwhelming evidence, or if the WCJ's summaries of the evidence were insufficient. Although Claimant contends that the Board's review required it to go beyond determining whether the WCJ's factual findings had evidentiary support in the record, **this is the standard** for determining whether a WCJ's findings will be **binding** on appeal. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). It is well settled that it is irrelevant if the record contains substantial evidence that supports findings contrary to those made by the WCJ; rather, the inquiry is whether there is evidence to support those actually made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155-56 (Pa. Cmwlth. 1998).

Reviewing the Board's Opinion with these principles in mind, the Board fully reviewed the record to resolve the issues related to the WCJ's findings raised in Claimant's appeal. The Board reviewed the record and the WCJ's findings of fact, which summarized the evidence presented, and concluded that the findings accurately and adequately summarized the evidence relevant to the issues before the WCJ, were supported by that evidence, and adequately explained why the WCJ credited some, but not other, evidence. In our view, nothing in the Board's Opinion reflects that the Board did not review the entire record or improperly limited its appellate review in making these determinations. In addition, the Board directly addressed the other issues Claimant raised on appeal, whether the WCJ's determinations on the amount of penalty and unreasonable contest fees were erroneous or reflected an abuse of discretion. The Board reviewed the evidence

21

related to those issues, cited relevant precedent, and concluded that the facts and law did not support reversal of the WCJ's Decision. Such consideration and resolution reflected the Board's proper exercise of its appellate review and, therefore, this is not a reason to reverse.

### B. Whether the WCJ's handling of this litigation reflected an abuse of discretion and/or violated Claimant's due process rights.

Claimant next argues that the WCJ abused her discretion and violated his constitutional right to due process in handling this litigation. Claimant contends the WCJ exposed him to "unnecessary litigation" by allowing Employer to unreasonably delay the litigation on the Claim Petition. Claimant asserts the only question before the WCJ was whether Claimant was eligible for WC benefits in Pennsylvania and that, at the February 22, 2017 hearing, "the undisputed facts establish[ed] [C]laimant's entitlement to PA benefits, with no defense to any element of compensability." (Claimant's Br. at 21.) At this point, Claimant argues, "[t]he [r]ecord should have been closed, and the sole, [o]riginal [q]uestion decided." (*Id.* (emphasis omitted).) But, Claimant maintains, the WCJ improperly allowed the record to remain open to allow Employer to allege, without evidence, that Claimant received WC benefits in New Jersey, and to challenge the description and duration of Claimant's disability through untimely obtained IMEs. (*Id.* at 22.) Claimant further argues he was prevented from testifying at the February 22, 2017 hearing, which unnecessarily delayed this litigation. Claimant further asserts he was forced to "withdraw" a review petition that he had filed to address additional "injuries which developed over time" due to "an 'off-the-[r]ecord'" discussion indicating that, were it not withdrawn, Employer would have been given more time to obtain additional medical examinations. (*Id.* at 29.) In addition, Claimant challenges the WCJ's refusal to issue a subpoena for

22

Employer's claims representative, as it was relevant to his claim for unreasonable contest fees. These decisions, Claimant maintains, represent an abuse of discretion by the WCJ and a violation of his constitutional rights and require reversal.

Employer replies there was no abuse of discretion or constitutional violation in this matter and Claimant's specific arguments are waived because they were not preserved for appellate review. The litigation here, it argues, involved an original claim petition, which requires the claimant to prove all of the necessary criteria in order to be entitled to benefits, including the duration and extent of disability, *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services)*, 126 A.3d 394 (Pa. Cmwlth. 2015), even if a claim had been accepted in another state, *Kelly v. Workmen's Compensation Appeal Board (Controlled Distribution Services, Inc.)*, 625 A.2d 135 (Pa. Cmwlth. 1993). According to Employer, a claimant's "physical condition is always at issue throughout proceedings on a Claim Petition." (Employer's Br. at 26.) Employer notes that had the record been closed after the February 22, 2017 hearing, none of Claimant's evidence in support of his Claim Petition would be in the record and he would have been unable to meet his burden of proof on the Claim Petition. It further points out that Claimant's counsel did not request that the record be closed at that time and/or object when the WCJ set the trial schedule, thereby waiving any challenge to the WCJ's failure to close the record and decide the issues at that time.

As for Claimant's other allegations, Employer responds to the merits of those claims, but also asserts Claimant waived them by not raising them before either the WCJ or the Board. On the merits of the alleged delays in its evidentiary presentation, Employer argues it obtained its first IME, by Dr. Schmidt, only 14 days after the October 26, 2016 hearing, and sought the second IME by Dr.

23

Bennett only when it became aware that Claimant was also presenting the testimony of Dr. Patil, a neurologist. Employer asserts that Claimant opposed the second IME and, therefore, it had to obtain authorization from the WCJ to obtain the IME, which occurred on February 22, 2017, and this IME occurred five days later. Further, Employer argues there is nothing in the record to support Claimant's assertion he was "forced" to withdraw a review petition, and the Court may not consider anything that is not in the certified record. Employer maintains there was no abuse of discretion in denying Claimant's subpoena request because it was aimed at obtaining evidence related to whether Employer's contest was unreasonable, an issue on which he had no burden of proof. This is particularly so, Employer asserts, where the WCJ found that Employer did not meet its burden of proof on the issue until November 9, 2016, and awarded unreasonable contest fees as a result. Employer argues there is no due process violation here because Claimant had the opportunity to be heard and present his case. Employer contends that the WCJ's rulings were not "so flagrant as to be repugnant to a man of reasonable intelligence" so as to rise to an abuse of discretion. (Employer's Br. at 35.)

Reviewing the record in this matter, including the transcripts from the various hearings before the WCJ and Claimant's appeal to the Board, we agree with Employer that Claimant has not preserved these challenges. Pennsylvania Rule of Appellate Procedure 1551, Pa.R.A.P. 1551, states that "[o]nly questions raised before the government unit shall be heard or considered," except questions related to a statute's validity, questions regarding "the jurisdiction of the government unit over the subject matter of the adjudication," and questions "that the court is satisfied the petitioner could not by the exercise of due diligence have

24

raised before the government unit." "An issue is waived unless it is preserved at every stage of the proceedings." *Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State Hosp.)*, 997 A.2d 382, 388 (Pa. Cmwlth. 2010). The "doctrine of waiver is applicable to workers' compensation proceedings." *Nabisco Brands, Inc. v. Workers' Comp. Appeal Bd. (Tropello)*, 763 A.2d 555, 558 n.6 (Pa. Cmwlth. 2000). A party's failure to object before a WCJ results in waiver for appellate purposes. *Id.* at 558. Similarly, the failure to raise an issue before the Board also results in the waiver of an issue for appellate review. *Budd Baer, Inc. v. Workers' Comp. Appeal Bd. (Butcher)*, 892 A.2d 64, 67 (Pa. Cmwlth. 2006). This includes constitutional violations alleged to have occurred during proceedings before a workers' compensation judge that were not raised before the Board. *Watkins v. Workers' Comp. Appeal Bd. (Caretti, Inc.)* (Pa. Cmwlth., No. 1280 C.D. 2017, filed. Apr. 2, 2018) (finding the claimant had waived the issue that his constitutional rights were violated because it was not raised before the Board, but could have been, and he was not challenging the validity of a statute, or the Board's jurisdiction).[17,18]

First, a review of the hearing transcripts and filings with the WCJ do not reflect any objection by Claimant when the WCJ set the trial schedule, allowed Employer to obtain a second IME to address Claimant's asserted head trauma, or

---

[17] *Watkins*, an unreported decision of this Court, is cited for its persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[18] While Employer also asserts waiver based on Claimant's failure to include issues in his petition for review, this is no longer a basis for finding an issue waived "if the court is able to address the issue based on the certified record." Pennsylvania Rule of Appellate Procedure 1513(d)(5), Pa.R.A.P. 1513(d)(5).

when the WCJ denied the subpoena.[19] (R.R. at 5a-6a, 12a-15a, 658a-59a; Certified Record Item 18 at 3-4.) In fact, Claimant's counsel stated at the February 22, 2017 hearing, that the WCJ's trial schedule "cover[ed] it." (R.R. at 15a.) At no point did Claimant challenge how the WCJ was handling the matter or indicate that the withdrawal of the Review Petition was involuntary. (*Id.* at 698a, 702a, 706a.) These are the actions that Claimant asserts violated his constitutional rights, and Claimant could have objected or challenged the WCJ's actions, allowing the WCJ to revise those rulings, had Claimant believed them invalid. As for Claimant's receipt of WC benefits in New Jersey, Claimant himself acknowledged before the WCJ receiving those benefits and he was the one who submitted the payment screen reflecting such payment. (*Id.* at 320a, 701a.) He similarly acknowledged, in a letter dated October 17, 2016, that if Pennsylvania benefits were awarded "the insurance company is entitled to a credit for any benefits already paid under the NJ acceptance of my claim." (*Id.* at 136a-37a.) Thus, there is nothing in the record before the WCJ reflecting that Claimant raised the arguments he now makes to the Court.

Second, a careful review of Claimant's appeal to the Board reveals that he did not raise these claims therein. There is no assertion in that appeal of a violation of Claimant's constitutional right and no mention of the denial of the subpoena request or that he was forced to withdraw a review petition, no challenge to the timeliness of Employer's IMEs, and no assertion that the litigation in this matter was unnecessarily prolonged by either Employer or the WCJ. (R.R. at 733a-34a.)

---

[19] In fact, when Employer attempted to question Safety Director on why a case was filed in New Jersey rather than in Pennsylvania, Claimant objected on the basis that the WCJ denied the subpoena. (R.R. at 672a-73a.) The WCJ sustained the objection. (*Id.* at 673a.)

As such, these issues are waived for appellate review. Further, while Claimant asserted in his appeal to the Board that "[h]ad the [WCJ] issued the Decision based solely on the issues initially 'contested' by [Employer], rather than permitting a full-blown litigation of the nature and extent of injuries, the outcome of this case would likely have been significantly different," (*id.* at 734a), Employer contested the nature and extent of Claimant's injuries from the beginning and supported that contest with Dr. Schmidt's November 9, 2016 IME, Dr. Bennett's IME, and Claimant's own medical records. The only issues that Employer did not contest, as reflected in the October 26, 2016 and February 22, 2017 hearing transcripts, was that Pennsylvania had jurisdiction over this claim and that some kind of injury had occurred on August 25, 2016, which had been accepted as a work injury in New Jersey. (*Id.* at 5a, 12a-13a.)

For these reasons, Claimant has not preserved these issues for appellate review.[20]

### C. Whether the WCJ issued a reasoned decision.

Claimant argues the WCJ's Decision was not a reasoned decision as required by Section 422(a) of the Act. Claimant asserts that the WCJ did not adequately or accurately summarize the evidence presented, particularly the medical records from Aria Health and Cooper Hospital. He also argues that the WCJ's explanations for the credibility determinations did not meet the standard necessary to be reasoned under the Act. Employer responds that the WCJ's Decision was reasoned in that the WCJ was not required to address all of the evidence presented

---

[20] Even were we to address these issues, our careful review of the records in the reproduced records and the certified record revealed no abuse of discretion, constitutional violation, or other impropriety in how the WCJ handled this matter.

27

and the credibility determinations were adequate because they were based on whether the witnesses' testimony was consistent with Claimant's medical records and results of objective tests.

Section 422(a) of the Act, 77 P.S. § 834,[21] requires that a WCJ issue a decision that is "reasoned," and a reasoned decision is "no more, and no less" than that the decision "allows for adequate review by the appellate courts under applicable review standards." *Daniels*, 828 A.2d at 1052. With regard to credibility determinations, "absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor," such as when the witness is testifying in person, there must be "some articulation of the actual objective basis for the credibility determination" in order for the WCJ's decision to be reasoned. *Id.* at 1053. Bases that have been found sufficient include an expert's opinion being based on erroneous factual assumptions, the expert may be more or less qualified than the opposing party's expert, the expert "may be impeached with inconsistencies or contradictions in his

---

[21] Section 422(a) of the Act provides, in relevant part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

28

or her testimony or reports" or "in some other convincing fashion." *Id.* at 1053. The reasoned decision requirement "does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). Further, "Section 422(a) does not require the WCJ to discuss all of the evidence presented"; "[t]he WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Dorsey*, 893 A.2d at 194 n.4.

Reviewing the WCJ's findings of fact, credibility determinations, and the record evidence, including the hearing and deposition transcripts and medical records, we disagree with Claimant that the WCJ's Decision was not reasoned as required by Section 422(a). The WCJ's numerous findings of fact accurately and adequately summarized and described the witnesses' testimony and the contents of Claimant's medical records from Aria Health and Cooper Hospital that the WCJ relied upon to support her legal conclusions. Claimant's main point of contention is with the summary of the medical evidence in this matter. With regard to the medical experts, the WCJ set forth each physicians' diagnoses, their review of the results of any objective tests and Claimant's medical records, their physical examination of Claimant, and the extent of their understanding of Claimant's past medical history that was relevant to the witnesses' determinations as to what was causing Claimant's current symptomatology. (FOF ¶¶ 5-6, 10-11.) With regard to Claimant's medical records from Aria Health and Cooper Hospital, the WCJ described the diagnoses resulting from those visits, what was not diagnosed or not complained of, how Claimant presented for treatment, the past medical history he provided each hospital, and the history Claimant gave regarding the work injury

29

that were relevant to the WCJ's legal conclusions. (*Id.* ¶¶ 7-8.) The WCJ was not required to address each and every piece of evidence presented, but "is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Dorsey*, 893 A.2d at 194 n.4. The WCJ's findings of fact satisfy this requirement and allow this Court to perform adequate appellate review. As such, these findings meet the reasoned decision requirement of Section 422(a). *Daniels*, 828 A.2d at 1052.

The WCJ's explanations for the credibility determinations likewise satisfy Section 422(a)'s requirements. In five separate findings of fact, the WCJ indicated whether each witness was credible, in whole or in part, and provided objective reasons for those determinations. These objective reasons were grounded on the contents of Claimant's medical records, including his past complaints that reflected, among other things, the same symptoms he was currently exhibiting and the results of Claimant's diagnostic tests, and whether the particular witnesses' testimonies were consistent with those records and results. (FOF ¶¶ 12-16.) Reviewing the records and testimony offered, the reasons given by the WCJ are supported by the records cited. These reasons were not based on inherent subjective circumstances, such as the witnesses' demeanor, but on actual objective bases. *Daniels*, 828 A.2d at 1053. The consistency of a medical expert's testimony with a claimant's medical records and the results of objective testing are convincing bases for accepting or rejecting such expert's testimony. *Id.* We are not left to guess the WCJ's reasoning for these determinations, and the explanations provided, which are supported by the record, allow this Court to perform adequate appellate review. Therefore, these determinations meet the reasoned decision requirement of Section 422(a). *Daniels*, 828 A.2d at 1052.

*D. Whether the WCJ's Decision was supported by substantial evidence.*

Claimant argues the WCJ's Decision should be reversed because the findings of fact were not supported by substantial evidence, but were based on a capricious disregard of the evidence. Claimant maintains the WCJ erred in relying on Employer's medical experts because that testimony was equivocal as they only reviewed select medical records. Employer responds that the WCJ's Decision was supported by substantial evidence and there was no capricious disregard of any evidence.

In a substantial evidence challenge, the WCJ is the ultimate fact-finder in workers' compensation cases, "[t]he WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned," and we are bound by those determinations. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 28-29 (Pa. Cmwlth. 2005). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). The role of the appellate court is not to reweigh the evidence, and we are bound by the WCJ's factual findings if they are supported by substantial evidence. *Bethenergy Mines*, 612 A.2d at 437. "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 n.4 (Pa. Cmwlth. 2008). When reviewing a WCJ's findings for substantial evidence, the Court reviews the evidence, and all inferences reasonably deducible therefrom, in the light most favorable to the prevailing party. *Id.* It is irrelevant if the record contains evidence that supports findings contrary to those made by the WCJ; rather, the inquiry is whether there is evidence to support those actually made. *Hoffmaster*, 721 A.2d at 1155-56. Although a "[r]eview for capricious disregard of

31

material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court," "where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). The express consideration and rejection of evidence, "by definition, is not capricious disregard." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144-45 (Pa. Cmwlth. 2004).

A review of the WCJ's findings of fact and the record as a whole does not support Claimant's assertions that those findings are not supported by substantial, competent evidence or that the WCJ capriciously disregarded evidence. As stated above, the WCJ's findings of fact accurately summarized the witnesses' testimony and the other evidence in the record as was necessary for the WCJ to resolve the issues before her. Relevant to the WCJ's ultimate conclusions in this matter, Dr. Stark credibly testified that Claimant sustained a cervical strain and sprain as a result of the August 25, 2016 work incident, Dr. Schmidt credibly testified that Claimant had recovered from that injury as of November 9, 2016, and Claimant's full recovery was confirmed by Dr. Bennett's credible testimony. (R.R. at 158a, 405a-06a, 539a-40a, 543a-45a.) A reasonable mind would accept this credited evidence as sufficient to support the WCJ's conclusions that Claimant sustained a disabling work injury in the nature of a cervical strain and sprain on August 25, 2016, but was fully recovered therefrom as of November 9, 2016. The WCJ rejected the testimony of Dr. Patil and Dr. Stark that attempted to relate additional injuries to the work incident because that testimony was not supported by

32

Claimant's medical records, including those immediately following that incident and the results of Claimant's objective studies. (FOF ¶¶ 14-15.) This is supported by the credited testimony of Dr. Bennett and Dr. Schmidt and the records from Aria Health and Cooper Hospital, and a reasonable mind would accept this evidence as sufficient to support the WCJ's findings. Ultimately, the WCJ credited the testimony of Dr. Schmidt and Dr. Bennett that Claimant's medical records showed that Claimant had serious, preexisting conditions that affected the same body parts that were at issue in the Claim Petition and that Claimant's symptomatology and related disability were not caused by the work-related cervical strain and sprain after November 9, 2016. A reasonable mind reviewing the detailed testimony of Dr. Schmidt and Dr. Bennett regarding Claimant's medical records, the similarity of Claimant's prior symptoms/conditions and current symptoms/conditions, and the results of objective studies of Claimant's cervical and lumbar spine, both before and after August 25, 2016, would accept this testimony as evidence that supports the WCJ's findings. Therefore, the WCJ's findings of fact are supported by substantial evidence, and we are bound by them.

As to Claimant's contentions that Employer's experts' testimony was not competent and that the WCJ capriciously disregarded the evidence, neither contention is persuasive. Although Claimant argues that the testimony of Dr. Schmidt and Dr. Bennett was equivocal and not competent because they did not review all of Claimant's records, whether a medical expert has reviewed all of the "medical records goes to the weight given the expert's testimony, not its competency." *Huddy v. Workers' Comp. Appeal Bd. (U.S. Air)*, 905 A.2d 589, 593 n.9 (Pa. Cmwlth. 2006) (citation omitted). On the issue of a capricious disregard of the evidence, the WCJ's findings of fact reflect that the WCJ considered the

evidence, weighed the evidence, and rejected, in part, the evidence Claimant presented in support of some of his claims. Such consideration and rejection of evidence, "by definition, is not capricious disregard." *Williams*, 862 A.2d at 144-45. While Claimant may disagree with the WCJ's Decision, we cannot conclude that there was a "deliberate and baseless disregard of apparently trustworthy evidence" in this matter, particularly where the WCJ's findings of fact are supported by substantial evidence. *Id.* at 144. Thus, this is not one of the rare instances in which the appellate courts will disturb the WCJ's Decision based on a capricious disregard of the evidence. *Wintermyer*, 812 A.2d at 487.

*E. Whether the WCJ's Decision was supported by the law.*

Claimant argues the WCJ's Decision granting him benefits for a closed period of time and awarding Employer a credit for any New Jersey WC benefits paid was not supported by the evidence or the law as there was no evidence of such payment. Claimant also asserts Employer could not deny responsibility for the work injury because it had been accepted in New Jersey. Employer responds there was no error in the WCJ's Decision because the WCJ rejected Claimant's evidence relating his ongoing complaints and disability to the work incident, rather than his longstanding preexisting conditions, precluding Claimant from meeting his burden of proving an ongoing entitlement to benefits. Employer argues that Claimant's physical condition was always at issue during the Claim Petition proceedings and that the acceptance of a work injury as compensable in a different state does not mean that injury is compensable in Pennsylvania.

The burden of proof in a claim petition proceeding is on the claimant, who must prove all of the necessary elements to support the award of benefits. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 945 (Pa. Cmwlth.

34

2008). To do so, the claimant must show that the injury "was sustained during the course and scope of employment[,] . . . is causally related thereto," and causes an ongoing disability. *Id.* If the evidence shows that the disability is not ongoing, "a WCJ can terminate benefits within the context of a claim petition even when the employer never filed a termination petition." *Id.* at 952. This occurs when a medical expert unequivocally testifies, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions, and there are no objective findings that substantiate any ongoing complaints the claimant may have or connect those complaints to the work injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

In order to obtain an award of ongoing WC benefits, Claimant bore the burden of proving not only that he sustained a work-related injury but also that he **continued** to be disabled **by that work-related injury**. *Coyne*, 942 A.2d at 945. While the WCJ credited evidence establishing that Claimant sustained a work-related injury on August 25, 2016, in the nature of a cervical sprain and strain, the WCJ also credited unequivocal medical evidence that stated that Claimant had fully recovered from that work-related injury as of November 9, 2016, and that any continued symptomatology and disability were related to Claimant's significant preexisting conditions. As stated above, the WCJ's findings of fact are supported by substantial, competent evidence and, therefore, are binding on this Court. *Bethenergy Mines*, 612 A.2d at 437. These findings support the WCJ's legal conclusion that Claimant was entitled to WC benefits **only** for the period from August 25, 2016, to November 9, 2016, with benefits terminating based on

35

Claimant's full recovery. Accordingly, we discern no error in the WCJ's award of benefits for a closed period.

As for the effect of payment of New Jersey WC benefits, Claimant appears to argue, simultaneously, that Employer could not deny his Pennsylvania claim because it accepted the injury in New Jersey but that Employer is not entitled to any credit for those New Jersey benefits because there is no proof that Employer ever paid benefits in New Jersey. On the latter contention, Claimant, himself, testified that Employer paid him benefits for the injury in New Jersey and offered a screenshot of a payment screen reflecting such payment, payments that Claimant asserted ended in March 2017. (R.R. at 320a, 701a.) On the former contention, we have held that an employer's payment of benefits under a different state's workers' compensation law "does not constitute an admission by the [e]mployer that [the c]laimant suffered a work-related injury or disability under Pennsylvania's Act." *Kelly*, 625 A.2d at 138. Thus, that Employer paid Claimant benefits in New Jersey was not an admission that the injury would be compensable in Pennsylvania. *Id.* Moreover, Employer was entitled to credit for the New Jersey benefits it paid. *Lesco Restoration v. Workers' Comp. Appeal Bd. (Mitchell)*, 861 A.2d 1002, 1003-05 (Pa. Cmwlth. 2004) (affirming Board order concluding that a claimant had established an entitlement to Pennsylvania WC benefits less a credit for benefits the employer had paid in New Jersey for the same injury). In fact, Claimant acknowledged, in a letter dated October 17, 2016, that if Pennsylvania benefits were awarded "the insurance company is entitled to a credit for any benefits already paid under the [New Jersey] acceptance of my claim." (R.R. at 136a-37a.)

36

*F. Whether the WCJ abused her discretion in awarding a de minimis penalty.*

Claimant asserts the WCJ abused her discretion by imposing only a *de minimis* penalty given "the full extent of [Employer's] conduct," which was "in blatant disregard of Pennsylvania Law" in numerous ways. (Claimant's Br. at 43-44.) According to Claimant, the WCJ's rationale for not imposing a higher penalty was that Claimant was not prejudiced by the violation, which Claimant contends is contradicted by the evidence. Employer responds there was no abuse of discretion in the WCJ's penalty award, as the amount of the award was within the WCJ's discretion. Further, it argues that of the 7 violations of the Act alleged by Claimant in his brief, only 3 were asserted in the Penalty Petition: the failure to issue an NCP or NCD within 21 days of its receiving notice of the injury and the failure to pay benefits timely and at the correct rates. Employer does not dispute that it did not issue an NCP or NCD, but argues that it had no obligation to pay any Pennsylvania benefits until the Claim Petition was resolved and, therefore, no violation occurred.

The claimant bears the burden of proof on a penalty petition and must show that the employer violated the Act or its related regulations. *Brutico v. Workers' Comp. Appeal Bd. (US Airways)*, 866 A.2d 1152, 1155-56 (Pa. Cmwlth. 2004). An employer must be given notice of the alleged allegations and an opportunity to defend against those allegations. *Crangi Distrib. Co. v. Workmen's Comp. Appeal Bd.*, 333 A.2d 207, 209-10 (Pa. Cmwlth. 1975). Even where a violation occurs, the decision to assess a penalty and the amount of any penalty is solely within the WCJ's discretion. *Brutico,* 866 A.2d at 1156. "[A]bsent an abuse of discretion . . . , we will not overturn the WCJ's decision on appeal." *Id.* "An abuse of

discretion is not merely an error of judgment but occurs, *inter alia*, when the law is misapplied in reaching a conclusion." *Id.* (citation omitted).

We discern no abuse of discretion in the WCJ's determination as to the penalty award. First, Claimant's Penalty Petition did not allege all of the violations he now alleges occurred, and, therefore, Employer did not have notice or an opportunity to defend against those allegations. Therefore, they are not bases upon which a penalty could be awarded. *Crangi*, 333 A.2d at 210. Second, although the Penalty Petition alleged violations based on Employer's failure to timely pay or to pay the proper amount, until there was a decision granting the Claim Petition, Employer's obligation to pay benefits under the Act was not yet established. Third, while Employer violated Section 406.1 of the Act when it did not issue an NCP or NCD within the required time period, 77 P.S. § 717.1, the WCJ acknowledged this violation and awarded a penalty that the WCJ deemed appropriate under the circumstances. Although Claimant argues the penalty amount was an abuse of discretion because he disagrees with the WCJ that he was not prejudiced by Employer's delay, the WCJ explained that the lack of prejudice was based on Claimant's receipt of New Jersey WC benefits. Claimant acknowledged his receipt of New Jersey WC benefits and presented evidence related to those payments. Under these circumstances, we cannot say that the WCJ abused her discretion in awarding a $500.00 penalty for Employer's failure to timely issue an NCP.

*G. Whether the WCJ erred in calculating the unreasonable contest fees.*

Finally, Claimant argues the WCJ's award of attorney's fees in this matter was erroneous in two ways. Claimant disputes the conclusion that after-acquired medical evidence can render an unreasonable contest reasonable. Claimant also

argues the WCJ erred by unilaterally reducing his Counsel's fee from $360.00 per hour to $150.00 per hour. Employer responds there was no error in limiting the unreasonableness of its contest to the time prior to Dr. Schmidt's November 9, 2016 examination, as such limitation is supported by precedent. It further responds that, consistent with her role under Section 440(b) of the Act, 77 P.S. § 996(b), the WCJ made findings regarding the amount and length of time for which an attorney fee is payable based upon the skill required, the duration of the proceedings, and the time and effort required and expended. Here, Employer argues, the WCJ awarded a sum of $1,050.00 to compensate Claimant's counsel for the time he expended on Claimant's behalf between September 9, 2016, and November 9, 2016, and as this award is reasonably related to the amount and difficulty of the work, the WCJ's discretion should not be disturbed. *Milton S. Hershey Med. Ctr. v. Workmen's Comp. Appeal Bd. (Mahar)*, 659 A.2d 1067, 1070 (Pa. Cmwlth. 1995).

Section 440(a) of the Act[22] provides that if the employer contests liability, the employer will be liable for a claimant's costs, including attorney's fees, if the

---

[22] Section 440 of the Act, which was added by Section 3 of the Act of February 8, 1972, P.L. 25, states in its entirety:

(a) **In any contested case where the insurer has contested liability in whole or in part**, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, **the employe** or his dependent, as the case may be, **in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee**, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

**(Footnote continued on next page…)**

matter is resolved in the claimant's favor in whole or in part. 77 P.S. § 996(a). But, if the employer's contest is reasonable, attorney's fees may be excluded. *Id.* "The reasonableness of an employer's contest depends upon whether the contest was prompted to resolve a genuinely disputed issue" and is a question of law subject to our review. *Coyne*, 942 A.2d at 956. As for the amount of that fee, Section 440(a) provides that it be a "reasonable sum," 77 P.S. § 996(a), and Section 440(b) requires the WCJ to make a finding as to the amount claimed, the length of time and effort expended "based upon the complexity of the factual and legal issues involved," and the duration of the proceedings, 77 P.S. § 996(b). "[T]he question of what is a reasonable sum for attorney's fees includes factual queries and that the determination of what are reasonable attorney's fees depends on the difficulty of the work performed by claimant's attorney." *Eugenie*, 592 A.2d at 361-62 (internal quotation marks and citation omitted). It is the WCJ, in the first instance, who has the authority "to determine what constitutes a reasonable fee," and the WCJ's "opportunities of judging the exact amount of labor, skill and responsibility involved . . . are necessarily greater than ours, and [the WCJ's]

---

**(continued…)**

> (b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

77 P.S. § 996 (emphasis added).

40

judgment should not be interfered with except for plain error." *Id.* at 362 (quoting *Good's Estate*, 24 A. 623, 623 (Pa. 1892)) (ellipsis in original).

We discern no error or abuse of discretion in the WCJ's determinations regarding the award of unreasonable contest fees. First, contrary to Claimant's arguments, an employer's contest, even if initially unreasonable, can become reasonable during the litigation based on "after-acquired medical evidence" to support the employer's arguments. *Crouse*, 801 A.2d at 659-60. While the employer remains liable for attorney's fees for the period in which its challenge was unreasonable, its "exposure to unreasonable contest fees [ends] for [the] fees incurred after producing evidence sufficient to support a finding of reasonable contest." *Id.* Here, the WCJ found that Employer's contest, while not reasonable at its outset, became reasonable upon its receipt of medical evidence that supported its arguments as to the extent of Claimant's work-related injuries and disability. This determination is consistent with *Coyne* and, therefore, was not erroneous.

Second, finding of fact 17 explained that the WCJ had reviewed Claimant's counsel's quantum meruit submission, and found that counsel had expended seven hours prior to November 9, 2016. As for counsel's rate, the WCJ stated that the rate would be "$150.00 per hour, based upon this specialty of law." (FOF ¶ 17.) A counsel's quantum meruit submission or agreement with a claimant is one item for a WCJ to consider in determining what "reasonable sum" is awardable under Section 422(a) of the Act, 77 P.S. § 996(a). *Eugenie*, 592 A.2d at 362. Here, the WCJ, who has greater opportunities to adjudge "the exact amount of labor, skill and responsibility," *id.* (citation omitted), than this Court, reviewed that document but concluded, based on the WCJ's experience, that $150.00 was the appropriate hourly rate "based upon this specialty of law," (FOF ¶ 17). We will not interfere

41

with this judgment absent "plain error," and we are unpersuaded that there is such error here. Although Claimant argues that the rate used by the WCJ was arbitrary because it was contrary to counsel's submission, there is no requirement that such submissions are conclusive on the WCJ. Without plain error, we will not interfere with the WCJ's determination that "the fee award was reasonably related to the work performed" by Claimant's counsel prior to November 9, 2016. *Milton S. Hershey Med. Ctr.*, 659 A.2d at 1070.

### III. Conclusion

After thoroughly reviewing the parties' arguments, the WCJ's Decision, and the record, and for the foregoing reasons, we discern no error or abuse of discretion by the WCJ or by the Board in upholding the WCJ's Decision. Accordingly, we affirm the Board's Order.

                                        _____

                                        **RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Staton,                                    :
                          Petitioner               :
                                                   :
            v.                                     :   No. 1648 C.D. 2019
                                                   :
Workers' Compensation Appeal Board                 :
(System One Holdings, LLC),                        :
                          Respondent               :


# **O R D E R**


   **NOW**, December 14, 2020, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.


                                       _____

                                       **RENÉE COHN JUBELIRER,** Judge